NEW ORLEANS *v.* LOUISIANA CONSTRUCTION COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 435. Submitted November 11, 1889. — Decided May 25, 1891.

The destination or character of spaces of ground, part of the public quay or levee in the city of New Orleans, dedicated to public use, and *locus publicus* by the law of Louisiana, is not changed so as to make them private property, subject to be taken on execution for the debts of the city, by a lease made pursuant to an ordinance of the city, by which the city grants to an individual the exclusive right for twenty-five years to use such spaces, designated by the city surveyor, and not nearer than one hundred and fifty feet to the present wharves, for the purpose of erecting thereon, for the shelter of sugar and molasses landed at the quay, fire-proof sheds, "with such accommodations and conveniences for the transaction of business as may be necessary;" and also grants to him the exclusive privilege of sheltering sugar and molasses landed at the port; and authorizes him to charge prescribed rates on the sugar and molasses sheltered under the sheds, and, in case those sheds "shall not be of sufficient capacity to meet the demands of increased production, or the requirements of commerce," to erect additional sheds on spaces to be designated by the city; he agrees to keep the sheds in repair, and to pay the city one-tenth of such charges; the sheds are to revert to the city on certain terms at the end of the lease; and right is reserved to the wharfinger to enforce existing regulations against encumbering the quay, and to the city to open or extend streets.

THE city of New Orleans, against which the Louisiana Construction Company, a corporation of Pennsylvania, had recovered a judgment for $50,000, filed a petition of intervention and of third opposition, according to the Louisiana practice, to have the seizure and sale, upon an execution issued on that judgment, of the interest of the city in four spaces of ground, part of the public quay or levee, and in certain sugar sheds thereon, prohibited and set aside, because the ground was "*locus publicus,* and the ground and sheds were, when seized and long prior thereto, and now are, exclusively devoted to public use, that is, to the purposes of commerce."

At the trial before the jury, it was proved that the spaces of ground on which the sugar sheds stood were between the front row of houses and the Mississippi River, and were part of the ground dedicated as *locus publicus* in the plans of the city made before the cession of Louisiana to the United States; that the spaces covered by the sheds had, in 1869 and for years before, been in actual and exclusive public use as the levee or landing place for the sugar and molasses brought to the city in steamboats and other vessels, there being no covering for the sugar and molasses when landed; that on August 14, 1869, the city made a lease for twenty-five years of these spaces of ground to Francis B. Fleitas, pursuant to, and following the words of, an ordinance of the city council, which is copied in the margin ;[1] that the lessee accepted the lease, erected the

---

[1] Mayoralty of New Orleans, City Hall, August 14, 1869.

No. 1528, N. S.

An ordinance to provide for the shelter and protection of sugar and molasses received at the port of New Orleans.

SEC. 1. Be it ordained by the common council of the city of New Orleans, that Francis B. Fleitas shall have and enjoy for the period of twenty-five years the exclusive right and privilege of using the public spaces on the levee, in the second district of this city, between Custom-house and St. Louis streets, commonly known as the Sugar landing — said spaces being designated on a plan of the city surveyor, to be by him submitted to the committee on streets and landings on or before the 15th day of September in the year 1869 — for the purpose of erecting and constructing thereon fire-proof sheds for the reception and shelter of sugar and molasses, according to the plans and specifications of the city surveyor on the day aforesaid,

sheds and had been in possession thereof ever since; that, save and except these sheds, the ground between the front

---

which sheds, with such arrangements for the transaction of business as may be convenient, are to be constructed on or before the 1st day of November, 1871, unless the construction be interfered with or prevented by extraordinary accident or calamity, from which time said privilege and right is to commence to run; Provided, that said Fleitas, immediately after the passage of this ordinance, shall have the right to enter upon and use the said spaces for the purposes of construction as aforesaid.

Sec. 2: Be it further ordained, that the terms and conditions on which said right and privilege are granted are the following:

1st. Said sheds are to be erected, with such accommodations and conveniences for the transaction of business as may be necessary, by said. Fleitas, at his own cost, and free of expense to the city of New Orleans, and during the existence of said privilege he is to keep said sheds in good order and repair at his own expense.

2d. Said Fleitas is allowed to charge, during the term said privilege is to last under the provisions of this ordinance, a sum not exceeding twenty-five cents on every hogshead of sugar, and fifteen cents on every barrel of molasses, sheltered under said shed, and no other charge for shelter is to be made, unless the packages aforesaid, after being under cover, shall change hands; then he is allowed to charge, each and every time such package changes hands while under cover, fifteen cents for each hogshead of sugar, and five cents for each barrel of molasses, at the time of transfer; Provided, that this last-mentioned charge is to be paid by each transferee or purchaser, and shall not be made when the sugar or molasses transferred or sold shall be removed by such transferee or purchaser on the same day he acquired title; Provided further, that sugar and molasses in other packages than hogsheads and barrels shall be subject to *pro rata* charges.

3d. That said Fleitas shall pay to the city of New Orleans, as a consideration for said privilege during the term aforesaid, ten per centum of the gross amount of charges realized for shelter on each hogshead of sugar and each barrel of molasses placed under said sheds, the said per cent to be paid quarterly, on statements rendered under oath to the treasurer of the city of New Orleans; Provided, that said sheds and the revenues or income derived therefrom or from said privilege shall not be subject to any municipal taxation whatever during the existence of said privilege.

4th. In addition to the above consideration, the said sheds, at the expiration of said term of twenty-five years, are to be appraised at their then cash value in the manner following: One appraiser to be appointed by the said Fleitas or his representatives, successors or assigns, and the other by the city of New Orleans. In case of disagreement, the two thus selected shall call in a third disinterested person as umpire; and the appraisement thus made shall be conclusive and binding on all parties; and the city of New Orleans shall have the option to take said sheds at one-half of said

row of houses and the river remained open and unobstructed as before; and that the spaces and sheds had been always and

---

appraised value, or of extending the privileges herein granted, on the same terms as those herein specified, for the further period of fifteen years, except that at the expiration of said fifteen years said sheds are to revert to the city in full ownership, free of all cost. In case the city of New Orleans, within three months after the expiration of said twenty-five years, shall fail or refuse to appoint an appraiser, it shall be considered as having exercised the option to extend the privilege aforesaid for fifteen years longer; and in case the said Fleitas, his representatives, successors or assigns, shall, within one month after the city shall have appointed its appraiser, fail or refuse to appoint an appraiser on his behalf, the city shall have the right of appointing two additional appraisers, whose appraisement shall be final, and said Fleitas shall receive one-half of the appraised value of said sheds from the city. On the presentation of the decision of the appraisers provided for in this clause, and on the payment of the said one-half of the said appraised value, the sheds and spaces on which they are erected as aforesaid shall be surrendered and transferred to the city of New Orleans.

SEC. 3. Be it further ordained, that the city of New Orleans hereby guarantees to said Fleitas, his representatives, successors or assigns, during the term of his privilege and its extension, the following:

1st. The undisturbed possession of said public spaces and the sheds thereon erected.

2d. That the present landing for sugar and molasses shall remain where it now is and as designated on the plans aforesaid.

3d. That no other landing for sugar and molasses shall be established or allowed for the city or port of New Orleans.

4th. That no other privilege for the reception and shelter for sugar or molasses shall be allowed by the city.

SEC. 4. Be it further ordained, that, in case the sheds erected under the provisions of this ordinance shall not be of sufficient capacity to meet the demands of increased production, or the requirements of commerce, the said Fleitas shall have the right to increase the number of sheds, said additional sheds to be erected on such spaces as the city may designate and on such terms as may be agreed on; Provided, that if said additional sheds are erected within ten years from the 1st November, 1871, the cost thereof is to be paid by the said Fleitas, his representatives, successors or assigns; and said additional sheds are to revert to the city at the expiration of twenty-five years from the date of construction, on the same terms in regard to appraisement and the option to extend the privilege of using the same as if the said additional sheds were originally constructed under this ordinance, and all the terms and stipulations of this ordinance shall be considered applicable to them in the same manner and to the same extent as they are herein applied to the original sheds.

exclusively used to receive sugar and molasses landed from steamboats and other vessels, as provided in the ordinance and lease.

The city offered evidence tending to show that said spaces were essential to the public use for the commerce of the port to receive said sugar and molasses. The Louisiana Construction Company offered evidence tending to show that these spaces were not necessary for public uses, and were not used for the landing of the sugar and molasses, and that the city exercised no control over the sheds; and also, to show the location of the sheds, offered in evidence a modern map by which it appeared that the space between them and the river was about one hundred and fifty feet, and was open to the public and traversed by railroad tracks. It was admitted that the spaces occupied by the sugar sheds, as well as the space between them and the wharves, were alluvion.

The city requested the court to instruct the jury that " the character of *locus publicus*, impressed upon ground within the city of New Orleans devoted to public use, cannot be changed, except by an act of the legislature of the State authorizing said change ; and hence that the city of New Orleans, without such legislative authority, had no power to change the character of a *locus publicus*, and thereby make said *locus publicus* subject to seizure and sale on execution for the debts of the city."

The city also requested the court to instruct the jury that if they found that the ground seized and sold on the execution issued on the judgment in favor of the Louisiana Construction

SEC. 5. Be it further ordained, that said Fleitas shall give security in the sum of fifty thousand dollars for the faithful performance of the stipulations herein contained.

SEC. 6. Be it further ordained, that the wharfinger shall have the right, at any time when the levee is encumbered, to enforce the now existing regulations.

SEC. 7. Be it further ordained, that the sheds shall not be located nearer than one hundred and fifty feet to the present wooden work or wharves.

SEC. 8. Be it further ordained, that, if at any time the city should desire to open or extend any street, the privilege hereby granted shall not in any manner prevent said street from being opened or extended.

Company " was *locus publicus,* as a portion of the public levee of this city, dedicated to the common use of the inhabitants of the city, to serve the public purposes of a levee and landing place for the sugar and molasses brought to this port by steamboats and other vessels navigating the Mississippi River; and if the jury find that in 1869 the city of New Orleans leased said spaces for the term of twenty-five years under ordinances of the city council and the contract with the lessee that he should erect over said spaces sugar sheds for the accommodation and protection of the aforesaid sugar and molasses landed from said steamboats and other vessels, the lessee to have the right to collect dues upon the sugar and molasses deposited under said sheds, for and in consideration of the accommodation and protection afforded by said sheds to said sugar and molasses, the city to be paid a percentage of said dues annually, and the sheds to revert and belong to said city at the end of said lease, as appears by said ordinances and contract in evidence; and if the jury find that said sheds were so constructed, and at and before the date of said adjudication, ever since 1869, the said spaces of ground and sheds were used for said purposes and for no other purposes; then the erection of said sheds upon and the use of said spaces, as provided by said contract and ordinances, did not change the character of said spaces as part of the public levee or *locus publicus,* and make said spaces and sheds over them liable to seizure and sale on execution for the debts of the city, and any such seizure and adjudication was illegal and passed no title to the purchaser."

The court declined to give either of the instructions requested, and instead thereof instructed the jury as follows:

"The space upon which the sugar sheds, the reversion of the title to which has been seized under a writ of *fieri facias* in this case, was, prior to August 14, 1869, upon the undisputed facts, established a *locus publicus.*

"By the undisputed evidence it is established that said space was a portion of what is called the 'batture,' which is the alluvial land between that portion of the city of New Orleans and the Mississippi River; and was a *locus publicus*

at the time when Louisiana was acquired by the United States.

" There is no doubt of the correctness of the general proposition that a public place is inalienable except by the sovereign; but a public place which is a portion of the batture, according to the well settled jurisprudence of this State, has a distinctive quality impressed upon it, and may be withdrawn from the use of the public by the city. This qualification is seen to be a public necessity when we consider that, by the action of the vast stream which half encircles the city, the levees may be so widened as that, unless a portion of them were used for buildings and the inhabited city extended over them, the city itself would possibly be left at an inconvenient distance from the river. Accordingly we find, both in the decisions of the highest tribunal of the State and in the act of the legislature, a clear recognition of the authority of the city to withdraw from the public use any portion of the batture which it deems no longer necessary to be held for that purpose.

"Therefore the court instructs you that it was lawful for the city of New Orleans to withdraw the said space from the public and to make it private property while it was a *locus publicus*. The fee was in the city and the use was in the public; and the question of fact for you to decide is whether the city did not by the contract or lease of the date of August 14, 1869, withdraw said space from the public use as being no longer necessary for the public.

" It is to be observed that the said contract gives to the grantee or lessee 'the exclusive right of using the public spaces,' and gives to him 'undisturbed possession of said public spaces and the sheds thereon erected.' Said sheds are to be for the purpose of storing sugar and molasses. There is no condition or requirement, in said grant or lease, which requires the grantee or lessee to receive up to the capacity of the sheds the sugar and molasses of any person offering, or which prevents him from any degree of discrimination; that is, he may store the products of one man and refuse those of another, although his store is not full. The contract reserves a royalty

as a rent. The possession thus granted is to continue for the period of twenty-five years. The contract protected the public by the provision that ' the sheds shall not be located nearer than one hundred and fifty feet to the present wooden work or wharves.'

" If you find this contract was executed by the city of New Orleans and was accepted by the grantee or lessee, and that he went into possession at the time of its execution, and ever since remained under it in possession, (and there is no dispute about these facts,) then the court instructs you there has been such a change in the destination of the property in question, such a withdrawal of it from the public, as makes it property held by the city for its own use and not that of the public, and makes its reversion liable to seizure on the part of a creditor of the city of New Orleans, and your verdict would be for the plaintiff in the writ and against the intervener and third opponent."

The jury returned a verdict against the city, on which judgment was rendered; and the city duly excepted to the refusals to instruct as requested, and to the instructions given, and sued out this writ of error. A motion to dismiss the writ of error, on the ground that the case should have been brought up by appeal, was overruled at a former term. 129 U. S. 45.

*Mr. Carleton Hunt* and *Mr. Henry C. Miller* for plaintiff in error.

*Mr. E. Howard McCaleb* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

Upon the admitted facts of this case, it is undisputed, and indisputable, that the spaces of land in question were originally part of the public quay or levee in New Orleans, dedicated to public use, and, in the phrase of the law of Louisiana, *locus publicus*, and that they never ceased to be such, so as to become private property subject to be taken on execution for debt, unless by force of the ordinance and lease of the city.

Civil Code, arts. 454 (445), 458 (449); *Mayor* v. *Magnon*, 4 Martin, 2; *Mayor* v. *Hopkins*, 13 Louisiana, 326; *New Orleans & Carrollton Railroad* v. *First Municipality*, 7 La. Ann. 148.

Two questions have been argued : First, whether the city of New Orleans had power to dispose of the land, so as to change its destination or character as *locus publicus*, and make the land its own private property ? Second, whether the city has done so ?

Upon consideration of the opinions heretofore delivered by this court and by the Supreme Court of Louisiana, the solution of the first question appears to be not wholly free from doubt. *New Orleans* v. *United States*, 10 Pet. 662; *Board of Liquidation* v. *Louisville & Nashville Railroad*, 109 U. S. 221; *Packwood* v. *Walden*, 7 Martin (N. S.) 81; *Delabigarre* v. *Second Municipality*, 3 La. Ann. 230; *Parish* v. *Second Municipality*, 8 La. Ann. 145. See also *New Orleans* v. *Morris*, 3 Woods, 103; *Hart* v. *New Orleans*, 12 Fed. Rep. 292. We abstain from expressing any opinion upon that question, because it is unnecessary to the decision of this case, inasmuch as we are of opinion that, if the city had the power contended for, it has not exercised it.

The object of the ordinance, as declared in its title, and recited in the lease, is " to provide for the shelter and protection of sugar and molasses received at the port of New Orleans." By the terms of the ordinance, repeated in the lease, the city grants the exclusive right for twenty-five years to use four public spaces, designated by the city surveyor, and not nearer than one hundred and fifty feet to the present wharves, on the levee commonly known as the Sugar Landing, for the purpose of erecting and constructing thereon fire-proof sheds, according to the plans of the city surveyor, for the reception and shelter of sugar and molasses; and the further right, in case these sheds " shall not be of sufficient capacity to meet the demands of increased production, or the requirements of commerce," to erect additional sheds on spaces to be designated by the city. The city guarantees to the lessee that he shall have undisturbed possession of the spaces and of the sheds erected thereon ; that the sheds and the revenues derived

therefrom shall not be subject to municipal taxation during the existence of the privilege; that the present landing for sugar and molasses shall remain where it now is, as designated on the plan aforesaid; and that no other landing for sugar or molasses, or privilege for its reception and shelter, shall be established or allowed by the city. The lessee agrees to erect the sheds, "with such accommodations and conveniences for the transaction of business as may be necessary," and to keep them in repair, at his own expense; is authorized to charge certain prescribed rates on each hogshead or barrel, or other package, of sugar or molasses sheltered under the sheds; and agrees to pay to the city one-tenth of the gross amount of such charges, and to give security in the sum of $50,000 for the faithful performance of the contract. It is further provided that the wharfinger shall have the right, at any time when the levee is encumbered, to enforce the now existing regulations; and that the privilege granted by the lease shall not in any manner prevent the city from opening or extending streets at its pleasure. At the end of the twenty-five years, the city is to have the option of terminating the lease and taking the sheds at half their appraised value, or of extending the lease for fifteen years, at the end of which the sheds shall revert to the city free of all cost.

Among the public uses for which the quay or levee was established, and to which it was devoted, was the landing of sugar and molasses brought by the Mississippi River to the port of New Orleans in the regular course of commerce and navigation. The real and the declared purpose of the ordinance and of the lease was to secure the necessary shelter for the sugar and molasses so brought and landed. The various stipulations of the contract, including the grant to the lessee of the exclusive use of the sheds and of the spaces under them, and the exclusive privilege of receiving and sheltering sugar and molasses at the port, were intended and adapted to accomplish this purpose, with the greatest benefit to the public, and with the least expense to the city. The shelter of the sugar and molasses from the weather was not a new and distinct use, nor in any sense a private one, but was incidental to the

principal public use of landing these articles of commerce. The sheds for sheltering the goods were as subservient to the public use of the quay, as the wharves for landing them.

The provisions requiring the lessee to erect the sheds " with such accommodations and conveniences for the transaction of business as may be necessary," and authorizing him to erect additional sheds, in case those first erected " shall not be of sufficient capacity to meet the demands of increased produc- tion, or the requirements of commerce," as well as the pro- vision defining and limiting the rates which he may charge for sheltering the goods, clearly show that he was to exercise a *quasi* public employment, and was charged with a duty of accommodating the public, like a wharfinger, a warehouseman or a common carrier, and had no right to refuse to shelter, to the reasonable capacity of the sheds, the sugar or molasses of any one applying to him, and paying him the prescribed rates.

The city has not undertaken to alienate or sell the ground under the sheds, but has only leased it for a term of years, reverting at the end of that term, with the sheds built thereon, to the city for the benefit of the public. The ground has no more ceased to be devoted to the public use by the making of the lease and the erection of the sheds, than if the city had itself built and managed the sheds for the promotion of com- merce and the benefit of the city and its inhabitants.

Moreover, the use of the levee for the equally important public use of a highway is carefully guarded by the provisions that the sheds shall not be nearer than one hundred and fifty feet to the existing wharves, that the existing regulations against encumbering the levee may be enforced by the wharf- inger and that the city may extend existing streets, or open new ones, notwithstanding any privileges granted by this contract.

Taking all the provisions of the lease together, we are of opinion that it in no way affected the character of the spaces in question as *locus publicus*, and that the city had no such private interest in those spaces, or in the sheds built upon

Decree.

them, as could be seized and sold on execution for the debts of the city.

*Decree reversed, and case remanded with directions to enter judgment for the city of New Orleans.*

MR. JUSTICE BREWER and MR. JUSTICE BROWN took no part in the decision of this case.