### UNITED STATES GRAMOPHONE CO. v. SEAMAN.

#### (Circuit Court of Appeals, Fourth Circuit. February 4, 1902.)

#### No. 419.

APPEAL—REVIEW—ORDER GRANTING PRELIMINARY INJUNCTION.

Under the settled rule that the granting or refusing of a preliminary injunction is not a matter of strict right, but rests largely in the discretion of the court, which will not be interfered with except where improvidently exercised, an order granting or continuing such an injunction will not be reversed on appeal, where it was made in an ancillary suit, and followed a similar order granted by another court in the principal case, and where the court acted after a careful consideration of the issues and facts, which were complicated.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

This case comes up by appeal from the circuit court of the United States for the district of West Virginia. The appeal is from an order granting and continuing a temporary injunction. The facts essential to a discussion of the questions involved in this appeal are these:

Emile Berliner was the inventor, patentee, and owner of a certain sound-producing machine, to which he gave the name of Gramophone. The United States Gramophone Company, a corporation of the state of West Virginia, became entitled to all the right, title, and interest of Berliner in these patents. Being so entitled, on 2d September, 1895, this corporation assigned and gave to one W. C. Jones, of New York City, the sole and exclusive right to manufacture, sell, lease, and deal in said inventions of Berliner in the United States. The consideration of this transfer is the payment of money and the performance of mutual covenants, all of which are carefully set out in detail. Jones is allowed to organize a company within 90 days from the date of the contract to take his place therein, enjoy all his rights thereunder, and assume and perform all contracts and obligations, and be bound by the conditions imposed on him in his contract with the United States Gramophone Company. One of the conditions of the contract is the right of forfeiture reserved to both parties upon the failure of the other party to perform its covenants thereunder. That Jones thereupon organized the Berliner Gramophone Company, and invested it with all his rights under this contract. The Berliner Gramophone Company, a corporation of the state of Virginia, on 18th October, 1896, entered into a contract with Frank Seaman, in which, styling itself the licensor, it declares itself to be in exclusive control, in the United States, of the inventions of Emile Berliner relating to the

gramophone, and thereupon grants to Frank Seaman the exclusive license to buy, sell, and deal, throughout the United States of America (except in the District of Columbia), in gramophones and gramophone goods embodied in the said inventions, and all improvements therein that may come to the licensor's control, excepting recording apparatus. Among the provisions of this agreement is this: The price which the licensor shall receive from the licensee for gramophones and gramophone goods shall be the sum of the following items: (1) The actual manufacturing cost; (2) a margin of 40 per cent. of the said manufacturing cost; (3) a royalty which the licensor is required to pay to the United States Gramophone Company, to the amount of 10 per cent. of the retail price of the gramophone and gramophone goods. There is also provision for cancellation by the licensor of the agreement in case of breach of covenant by Seaman. Differences arose between Seaman and the Berliner Gramophone Company. These culminated in a suit by Seaman in the circuit court of the United States for the Western district of Virginia against the company, charging breaches of the covenants, and praying injunction; whereupon a temporary injunction was granted. The interest in, and certain actions of, the United States Gramophone Company, in connection with this contract, having been developed at the hearing, Seaman filed his bill against the Berliner Gramophone Company and the United States Gramophone Company in the Western district of Virginia. No service could be made of process under this bill on the United States Gramophone Company, inasmuch as it was a resident of West Virginia, and had no one in Virginia who could be served for it. Thereupon Seaman filed in the circuit court of West Virginia the bill the basis of this suit. The United States Gramophone Company is a corporation of West Virginia.

This bill recites the filing of the proceedings against the Berliner Gramophone Company in the Western district of Virginia; the granting of the temporary injunction upon it; the various proceedings thereupon; the filing of a bill against both the Berliner Gramophone Company and the United States Gramophone Company, seeking relief; the failure of this bill to effect its purpose, because the United States Gramophone Company was not a resident of that district. It was then charged that certain stockholders in these two Gramophone Companies had signed an agreement for the sale of a controlling interest in their stock to one Charles Adamson, whereby the two corporations are practically dissolved, and a new corporation created, called the Consolidated Talking Machine Company of America, the object, purpose, and effect of which is to enable the Berliner Gramophone Company, by colluding with the United States Gramophone Company, to avoid the result of its breach of contract, and to escape the effect of the decrees of the court. It then recites the transaction between the United States Gramophone Company and Jones; the confirmation of this transaction by Berliner, the patentee; the vesting of all Jones' rights in the contract in the Berliner Gramophone Company; the contract between this gramophone company and the complainant, by which complainant acquired the exclusive right to sell all the gramophones and gramophone goods manufactured by the said gramophone company; the active prosecution by complainant of his work under said contract, and the large expenditure of money by him in promoting it; the failure of the Berliner Gramophone Company to perform its contract, and the suit thereupon by the complainant. The bill then goes on to charge a conspiracy between these two gramophone companies and other persons for the purpose of injuring and defrauding complainant, of the refusal to deliver him the goods according to the contract, and of their forfeiture of the contract, and that to this end they have served him with notice of the cancellation of the contract, not only between him and the Berliner Gramophone Company, but also between these two companies, which notices, however, it is charged, are entirely insufficient, and not in conformance to or compliance with the contract, and in the case of the latter notice is collusive and fraudulent, not properly given, and not justified by the terms of the contract, and that the United States Gramophone Company has all along had full notice of the rights of complainant.

The bill prays an injunction restraining the cancellation of the contract made between the Berliner Gramophone Company and the complainant, and

between the same company and the United States Gramophone Company; also an injunction against the United States Gramophone Company, and all persons acting under it, from assigning, transferring, or in any manner disposing of, alienating, or affecting, the right, title, and interest of the defendant in the patent rights transferred by and described in said contracts, and from dealing with them in any way by which they may go into the hands of any one, save subject to the rights of complainant therein; that the United States Gramophone Company be enjoined from effecting or carrying out any scheme of consolidation with the Consolidated Talking Machine Company of America or any other corporation; that it be required to produce and file with the clerk, pending the determination of the controversy in this case, all the originals of the said patents and improvements thereon, the subject of the contracts aforesaid; and for general relief.

On 4th October, 1900, upon filing the verified bill, a temporary injunction was issued, with leave to defendant, on 20 days' notice, to move to set it aside. On 5th November, 1900, the defendant gave notice of a motion to dissolve the temporary injunction, and on 6th November filed its answer to the bill. On 30th November, 1900, the motion came up for a hearing, and was postponed by the court until certain depositions could be taken by both sides. On 24th January leave was given to complainant to file a supplemental and amended bill, in which is set out in full the alleged agreement for consolidation of the two gramophone companies. It contains practically the same prayers as the original bill. To this supplemental amended bill the defendant demurred: (1) Because no cause is stated entitling complainant to the relief prayed therein. (2) Because the Consolidated Talking Machine Company of America and Charles Adamson and the Berliner Gramophone Company were necessary parties to the bill. (3) Because they are nonresidents of this district, and cannot be compelled to answer herein. (4) There seems to be a defect in this ground, which is in these words: "That there is not any person or persons or corporations who or which have or has a common interest with the said Consolidated Talking Machine Company of America, or the Berliner Gramophone Company, or Chas. Adamson, or the persons who signed the agreement of June 15, 1900, either collectively as a class or individually, whose interests in the said bill affect and who will be affected if the relief prayed for is granted." (5) Because by plaintiff's own admission he has a complete remedy against the Consolidated Talking Machine Company of America, and therefore his remedy is against that company, and not this defendant.

On 27th April, 1901, defendant moved to dissolve the injunction granted 4th October, 1900. The court did not pass on the motion, but on 15th May, 1901, entered this order: "(1) The plaintiff, Frank Seaman, shall, within fifteen days from this date, enter into a stipulation with the United States Gramophone Company, whereby he shall agree upon his part to carry out in good faith, and in all respects, all the terms, covenants, agreements, and stipulations contained in the contract of October 10, 1896, between him and the Berliner Gramophone Company; and the said United States Gramophone Company shall likewise stipulate within a like period of time to carry out and perform all the agreements, covenants, and stipulations contained in said contract, so far as the same were to be performed by the said Berliner Gramophone Company,—that is to say, the United States Gramophone Company shall take the place under said contract of the Berliner Gramophone Company, and perform the said contract just as it is provided therein to be performed by the Berliner Gramophone Company. (2) Should either the said Frank Seaman, plaintiff, or the United States Gramophone Company, defendant, within the time aforesaid, fail to enter into such stipulation, or, if entered into, fail to carry out the same in good faith, in all respects, then, and in that event, the motion to dissolve the injunction, awarded in this cause on October 10, 1900, is continued until June 12, 1901. Should said stipulation be entered into, however, this decree shall not be construed so as to relieve Frank Seaman, the plaintiff, of the performance and execution of any covenant and agreement to pay the United States Gramophone Company the royalties provided for under the contract of October 10, 1896; but, on the contrary, it is the intention of this decree to declare that said roy-

alties shall be paid to the said United States Gramophone Company, if said stipulation be entered into, in the same way, and in the same amounts, as provided for in said contract. The said stipulation, if entered into, shall in no wise prejudice the rights of any of the parties to this or any other litigation, and it shall only be in force and effect until the further order of the court, and in no event longer than the end of the litigation now pending in Virginia between Frank Seaman and the Berliner Gramophone Company."

On 5th June, 1901, defendant filed its answer to the amended supplemental bill. Efforts were made to prepare the stipulations ordered by the court, but it appears by an order of 15th June, 1901, that the defendant had not signed the stipulation; whereupon the court on 15th June, 1901, directed that the United States Gramophone Company and the Berliner Gramophone Company should both sign the stipulation within 10 days. If they did not do so, the motion to dissolve the injunction would be overruled, and the same continued. On 15th June, 1901, defendant filed his petition for leave to appeal, with assignment of errors. The appeal was allowed, and the cause is here. There are 12 assignments of error, as follows: "(1) It was error to award the injunction of October 4, 1900, without notice to the defendant company. The order awarding said injunction is hereby referred to and made a part of this assignment. (2) It was error to make and enter the decree of November 30, 1900, instead of hearing the motion then submitted to dissolve the injunction, due notice of which had been given. (3) It was error to permit the plaintiff, without notice to the defendant, to file his amended and supplemental bill. (4) It was error to have overruled the demurrer of the defendant company to said amended and supplemental bill, as was done by the decree of May 15, 1901. (5) It was error to have rejected the stipulation tendered by the defendant company in pursuance of the requirements of decree of May 15, 1901; and to have required the defendant company to make another and new stipulation, as was done by the decree entered in this cause June 15, 1901. (6) It was error to make and enter the decree of May 15, 1901, and by that decree to require the parties, plaintiff and defendant, to enter into any stipulation whatsoever. (7) It was error in the decree of June 15, 1901, which put upon the defendant company the necessity of procuring the execution of the new proposed stipulation by the Berliner Gramophone Company, and it was error to enter the last order of June 15th, modifying previous orders and decrees. (8) It was error in the decree of June 15, 1901, in providing for a new stipulation, and further providing that, unless the new stipulation was executed within ten days from the date of said decree by the defendant company and the Berliner Gramophone Company, the motion to dissolve the injunction awarded October 4, 1900, should stand overruled, and the injunction continued. (9) It was error not to have sustained the motion of the defendant company to dissolve the said injunction awarded, as aforesaid, on October 4, 1900. (10) It was error to overrule the motion made by the defendant in the order of May 15, 1901, for an increase in the penalty of the injunction bond. (11) It was error to have entered any decree in this cause after the first regular term of the court held after October 4, 1900; the next regular term of the said court after October 4, 1900, being fixed by law to begin on the 10th day of January, 1901. (12) There are other errors apparent on the face of the record on account of which the appellate court will be asked to reverse the proceedings had in this cause."

Marshall McCormick (Isaac Nordlinger, on the brief), for appellant.
John T. Harris and Waldo G. Morse, for appellee.

Before SIMONTON, Circuit Judge, and PURNELL and WADDILL, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). The record is large and confusing. It is essential, therefore, to keep in mind the question, and the only question, which presents itself to this

court under this appeal at this term. It is an appeal from an interlocutory order; and the only order from which an appeal can be taken at this stage of the case is the order of 15th June, 1901, continuing the injunction. Under the act of congress of 1900 (31 Stat. 660) appeals lie from interlocutory orders granting or continuing an injunction, provided the appeal is taken within 30 days from the entry of the order. The first temporary injunction was granted October 4, 1900. The appeal in this case was 15th June, 1901. So the first and ninth assignments of error need not be regarded.

With regard to the other assignments of error, they are directed largely to the merits of the case, and bear incidentally on the question as to continuing the temporary injunction. Was this improvidently awarded? The rule upon this subject is clearly stated in Welsbach Light Co. v. Cosmopolitan Incandescent Light Co., 43 C. C. A. 419, 104 Fed. 84, and it applies as well to the granting as to the refusing to grant an injunction.

"In determining in a given case whether the circuit court erred in refusing an injunction pending litigation, it is to be remembered that such injunction in no case is a matter of strict right. The application for it must be addressed to the sound discretion of the court. It may be granted or refused unconditionally or on terms. Upon appeal ordinarily the question is simply whether the court acted improvidently. Only when clearly erroneous will the order be reversed."

See, also, Ritter v. Ulman, 24 C. C. A. 71, 78 Fed. 222, 42 U. S. App. 263.

In the case at bar the record presented grave questions requiring careful deliberation. There were charges and counter charges. The facts were complicated, and needed full investigation. Another court of co-ordinate jurisdiction was engaged in the same investigation and examination, and had issued its temporary injunction. The case was evidently auxiliary to the case referred to pending in the Western district of Virginia, and was brought in the district of West Virginia solely because the present defendant refused to waive its privilege of trial in the district of its residence. The court below clearly was impressed with the comity due to the court in Virginia. The learned judge, who had had the widest experience, gave the case his most careful and patient examination. He came to his conclusion slowly, and not improvidently. Under all these circumstances, it seemed to him desirable that the status quo should be maintained, certainly until the main issues should be passed upon and determined in the case before the circuit court of the Western district of Virginia.

We are not prepared to say that the action of the court below in continuing the temporary injunction was improvident. Its decree is affirmed.