### KERR et al. v. CITY OF NEW ORLEANS.[*]

(Circuit Court of Appeals, Fifth Circuit. December 30, 1903.)

No. 1,234.

1. EXECUTION—PROPERTY OF MUNICIPAL CORPORATION

Though property owned by a municipal corporation used for public purposes or charged with a public use cannot be sold on execution against the corporation, the private property of the corporation, owned by it for profit, commerce, or investment, may be so sold.

2. SAME—PRELIMINARY INJUNCTION—REVIEW

Under Act Cong. March 3, 1891, c. 517, § 7, 26 Stat. 826 [U. S. Comp. St. 1901, p. 547], authorizing an appeal from a decree granting an injunction pendente lite, an order granting such injunction will not be disturbed on appeal unless there has been an abuse of the trial court's discretion in granting the same.

3. SAME—DETERMINATION OF MERITS.

Where an injunction pendente lite was granted before issue joined, and it appeared that the case was one involving controverted questions of fact, the appellate court, on appeal from the order granting such

---

* Rehearing denied February 2, 1904.

¶ 1. See Execution, vol. 21, Cent. Dig. § 133.

injunction, would not examine the merits of the case to determine whether the injunction was improvidently granted.

4. SAME.

Where a sworn bill to restrain the levy of an execution against a municipality on certain property alleged that the property had been dedicated to public use, and that its public character had never been changed, and the return to a rule to show cause why the injunction should not issue before answer merely alleged that the property was held under a lease from which the city derived revenue, and that on two occasions it had advertised the property for sale, but other affidavits on behalf of the city averred that such advertisements were merely for the purpose of fixing the value of the property, and that the city had rejected all bids for the sale of the property, the granting of a preliminary injunction was not improvident.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

George P. Kerr recovered a judgment against the city of New Orleans in the Circuit Court for $2,503. An execution issued thereon by authority of which the marshal seized a certain square of ground situated in the city of New Orleans, with all the buildings and improvements thereon, and all rights, ways, privileges, and servitudes thereunto belonging. The city by supplemental bill applied for a restraining order and injunction against the seizure and sale of the property. The fourth paragraph of the bill is as follows: "And your orator further complains and says that the said Kerr, for the use and benefit of Bernard Berkson, is without right or power to seize and sell the aforedescribed real estate under the writ of pluries fieri facias obtained by him, for the reason that said property was and is dedicated to public use and held by your orator in trust for the use and benefit of all the inhabitants of the city of New Orleans, as part of the public quay in use as a sugar shed. That, as declared by the Supreme Court of the United States as to this property in the case of New Orleans v. Louisiana Construction Company, 140 U. S. 681 [11 Sup. Ct. 971, 35 L. Ed. 556]: 'It is undisputed and indisputable that the spaces of land in question were originally part of the public quay or levee in New Orleans dedicated to public use, and in the phrase of the law of Louisiana locus publicus, and that they never ceased to be such.' That as aforesaid the property seized was set apart by the city of New Orleans to provide for the shelter and protection of sugar and molasses received at the port of New Orleans. That the said property seized is a portion of the public quay or levee, and that part on which the said sugar shed stands is between the front row of houses and the Mississippi river, and is part of the ground dedicated as locus publicus in the plans of the city made before the session of Louisiana to the United States. That for many generations it has been in actual and exclusive public use as a levee or landing place for the sugar and molasses brought to the city in steamboats and other vessels, and has been covered to afford protection for the said sugar and molasses when landed in the regular course of commerce and navigation. That, as found by the honorable Supreme Court of the United States in the case referred to, the sheltering of the sugar and molasses from the weather by the city of New Orleans, either directly or through the instrumentality of an agent appointed for that purpose, was not a new and distinct use, nor in any sense a private one, but was incidental to the principal public use of landing the aforesaid articles of commerce, and that the sheds for sheltering the goods were as subservient to the public use of the quay as the wharves for landing them. That the title to the said property always has been and still remains in the public. That the public never has been divested thereof. That the use of the levee for the equally important use of a highway has always been carefully guarded, and its destination or character as locus publicus has never been changed." Upon the application of the city a restraining order was granted by Pardee, Circuit Judge, to remain in force until the decision upon the motion for an injunction. Rev. St. U. S. 718 [U. S. Comp. St. 1901, p. 580].

To "the rule to show cause why the injunction prayed for should not issue" defendants filed a "return," with accompanying exhibits. The "return," omitting reference to the exhibits, was as follows:

"That the property so seized is the property of the city of New Orleans, in commerce, and subject to seizure for the payment of the judgment rendered in favor of respondents. That heretofore the said property so seized was held under lease by the New Orleans Sugar Sheds Company, from which the city of New Orleans derived a revenue for the use and occupancy of same. That on May 19, 1902, by ordinance No. 1,243, New Council Series (Calendar No. 1,680), the city of New Orleans, acting through its proper authorities, directed the comptroller to advertise for sale the property seized herein, the sale of the property so advertised to be on terms of one-third or more cash, and the balance in the notes of the purchasers, bearing interest at the rate of 6 per cent. per annum from date until paid, with the usual clauses for the protection of the city for the unpaid part of the purchase price. That, in accordance with the directions of the city council of the city of New Orleans, the comptroller did on June 6, 1902, and on subsequent dates, cause to be advertised in the official journal of the city of New Orleans, to wit, the Daily States, the property seized in this case, inviting bids for the purchase of said property upon the terms provided in said ordinance. That on July 7, 1902, the comptroller of the city of New Orleans, acting under the directions of the ordinance aforesaid, submitted his report to the president and members of the city council, in which it was recited that the property herein seized had been advertised for sale and had been offered for sale in the council chamber of the city of New Orleans, that the bids for said property aggregated the sum of $149,000, and submitting the bids so offered for the action of said city council, the ordinance under which said sale was directed reserving to the city to reserve the right to reject any and all bids for said property. Respondents further show that upon the receipt by the city council of the report of the comptroller as aforesaid the same was referred by the council to committee No. 2, known as the 'Finance Committee' of the city council of New Orleans. That the said committee on finance, having considered, as shown by their report to the council, the communication of the comptroller as aforesaid, submitting bids for the property seized herein, reported and recommended that the bids for the said property be rejected, and the sum deposited with the comptroller refunded to George W. Nott, who was the highest bidder for said property, and that the action of said finance committee was approved and adopted by the council. Respondents further show that since the action of the council in rejecting the bids for the property seized herein subsequent efforts were made to sell the same; that said property is in commerce, and held by the city of New Orleans at such prices and on such terms as the city council may see fit and proper; and that the city council have, within the last ten days, made renewed efforts to sell said property; and that, said property being in commerce, it is subject to the payment of the debts of the city of New Orleans, and particularly to the judgment of your respondents, under which judgment execution issued, and which property is now in the custody of the marshal of this court, for sale under the court's directions and under the law. Wherefore these respondents pray that the restraining order issued herein be vacated and set aside; that the application for an injunction upon the part of the city of New Orleans, so far as it affects the property the subject of this controversy, be denied; that the respondents and plaintiffs in execution be allowed to proceed with their execution in accordance with law, and to satisfy the same by the sale of the property herein sought to be relieved from the operation of the writ of seizure herein; and respondents pray for all further orders and general relief.

"Henry L. Lazarus, for Kerr and Berkson, Respondents."

The complainants offered in evidence two affidavits, as follows:

"State of Louisiana, Parish of Orleans. Before me, the undersigned authority, personally came and appeared William Mehle, who, being duly sworn, deposes and says that he is president of the common council of the city of New Orleans, and has been such president for two years past; that the sugar sheds were advertised for sale, as shown by the ordinances to that effect,

the council reserving the right to reject any and all bids; that bids were made and rejected; that the sugar sheds are used for the purposes for which they were intended, and form a part of the quay or landing place of the city of New Orleans; that the council has not changed their use, and it is doubtful whether it will do so. It may be that, in order to ascertain the value of this property from time to time, ordinances providing for its sale may be introduced and passed, but unless a very large figure were offered the council would not seriously consider parting with the sheds. Should the council be satisfied with the price, it would then be necessary for it to determine the question whether the property could be dispensed with, and whether it is not indispensable to the public use. Merchants engaged in commerce along the river front claim that the space is already insufficient, and it might be, should the council determine to sell the sheds, that strong representations may be made to it of the necessity for the continued public use of this property; that the council would be bound to declare that it was so necessary to the public use. William Mehle.

"Sworn to and subscribed before me, notary, this 4th day of December, 1902.

"Bernard C. Shields, Notary Public."

"State of Louisiana, Parish of Orleans. Before me, the undersigned authority, personally came and appeared Bernard C. Shields, who, being duly sworn, deposes and says that he is a member of the council of the city of New Orleans; that he knows the sugar sheds property seized in the suit of Berkson, and knows that it is still used for the purposes for which it was intended, to wit, as sugar sheds to protect sugar in transit in the port of New Orleans; that the council has made a tentative offer to sell this property, but has never withdrawn it from public use; that all bids were rejected some months ago, upon the only proposal the city ever made to sell this property. It may be in the future another attempt will be made to ascertain the real value of this property, not only for sale, but for leasing purposes, but, should the council determine to sell, it would then have to consider its effect upon the commerce of New Orleans. The question would then arise whether the advantage in price would not be more than offset by the disadvantage of the commerce of New Orleans in withdrawing from the public use any dispensable part of the landing. Affiant further says that it is very doubtful whether a sale would be made, even if the terms were satisfactory, but affiant declares that the said property has not been withdrawn from the public use, and that up to this time there has been no intention so to withdraw it.

"Bernard C. Shields.

"Sworn to and subscribed before me, notary; this 5th day of December, 1902.

"Charles B. Upton, Notary Public."

Thereupon the Circuit Court made this order:

"This cause came on at this term to be heard upon the rule of the complainant for an injunction pendente lite, as prayed for in the supplemental and amended bill filed October 16, 1902, and was argued by counsel and submitted to the court: Whereupon, and on consideration thereof, it is now ordered that a preliminary injunction issue herein as prayed for in said supplemental and amended bill. Charles Parlange, Judge.

"Feby. 13, 1903."

The defendants appealed to this court, and assign, with proper specifications, that the Circuit Court erred in the decree granting the temporary injunction.

Henry L. Lazarus, for appellants.

Arthur McGuirk, Asst. City Atty., for appellee.

Before McCORMICK and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is well settled that property owned by a municipal corporation, and used for public purposes, or charged with public trusts or uses, cannot be sold under execution issued on a judgment rendered against the corporation. 2 Dillon, Mun. Corp. (4th Ed.) 576, 577; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; Mayor v. Hopkins, 13 La. 326. But the private property of the corporation—that is, such as it owns for profit, commerce, or investment, and that is not charged with public trusts or used for public purposes—may be sold on execution against the corporation. Dillon, Mun. Corp. (4th Ed.) 576; City of New Orleans v. Home Insurance Co., 23 La. Ann. 61.

It has already been determined by the highest authority that the property levied on was locus publicus, and not subject to levy and sale (New Orleans v. Louisiana Construction Company, 140 U. S. 654, 11 Sup. Ct. 968, 35 L. Ed. 556); and that determination will be conclusive in this case unless it appears on the final hearing that the property, by proper authority, has been changed to private property held by the city for purposes of commerce, investment, or profit, and not for public purposes, and that it is not charged with public trusts or uses. We mention this not to intimate any opinion, but to indicate that the final decision of this case may depend on the solution of a controverted question of fact.

In the decree appealed from the Circuit Court has not reached the merits of the case. An injunction pendente lite only has been granted. The court has decided only to preserve the existing conditions till a hearing on the merits. When the case is at issue and the evidence taken the bill may be dismissed or the injunction may be perpetuated. In the decree before us the court has only decided that the plaintiff is entitled to have the defendant enjoined from selling the real estate levied on pending the suit.

Formerly the granting of an injunction pendente lite was in the absolute discretion of the primary court, inasmuch as its action was not reviewable by appeal. The act of March 3, 1891, allowed an appeal from such decree. Act March 3, 1891, c. 517, § 7, 26 Stat. 826 [U. S. Comp. St. 1901, p. 547], amended June 6, 1900, c. 803, § 7, 31 Stat. 660 [U. S. Comp. St. 1901, p. 551]. But since this act was passed its uniform construction has been that the granting of an injunction pending the suit is in the sound judicial discretion of the trial court, and that its order will not be disturbed on appeal unless it is violative of the rules of equity that have been established for the guidance of its discretion. In some of the cases the same meaning is expressed by saying that the ruling of the trial court in granting the temporary injunction will not be reversed unless there has been an "abuse" of its discretion, and in others it is said that the decree will not be reversed unless it clearly appears that the injunction has been "improvidently" allowed. The appellate court is not to decide what it would have done as to allowing the injunction, but it must recognize that the law has imposed on the trial court the responsibility of the exercise of this power and the duty to exercise this discretion, and unless there has been a plain disregard of some settled rule of equity which should govern the issue of injunctions, so that it appears clearly that the injunction is issued improvidently,

the decree should not be reversed. Note to act establishing the Circuit Courts of Appeals (90 Fed. xliv); Proctor & Gamble Co. v. Globe Refining Co., 92 Fed. 357, 34 C. C. A. 405; Dimick v. Shaw, 94 Fed. 266, 36 C. C. A. 347; City of Terre Haute v. Farmers' Loan & Trust Co., 99 Fed. 838, 40 C. C. A. 117; Lake Shore, etc., Ry. v. Felton, 103 Fed. 227, 43 C. C. A. 189; Bartholomew v. Union Paper Co., 113 Fed. 289, 51 C. C. A. 250; United States Gramophone Co. v. Seaman, 113 Fed. 745, 51 C. C. A. 419; Chickering v. Chickering, 120 Fed. 69, 56 C. C. A. 475; Empire State, etc., Mining Co. v. Bunker Hill, etc., Mining Co., 121 Fed. 973, 58 C. C. A. 311; New Albany Waterworks v. Louisville Banking Co., 122 Fed. 776, 58 C. C. A. 576.

It is true that on an appeal from such interlocutory decree the appellate court is authorized to look into the merits of the case, and there is a class of cases in which it would be proper for the court to save both parties the expense of further litigation. Where the equity of the bill is challenged, if the appellate court was of opinion that the plaintiff was not entitled to an injunction because his bill had no equity to support it, the court should direct the dismissal of the bill. Smith v. Vulcan Ironworks, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810. But this is clearly not such a case, because here the issues are not yet joined by pleading, and it is indicated by the bill and affidavits and the "answer to the rule" signed by the defendants' solicitor that the case is one involving controverted questions of fact. In Clark v. McGhee, 87 Fed. 789, 31 C. C. A. 321, this court, speaking by Judge McCormick, asserted its authority in a proper case on such an appeal to decide the case on its merits, but said that "where the record is insufficient or incomplete the court will only consider whether the interlocutory order was providently granted."

It is alleged in the bill, which is sworn to by the mayor, that the property levied on is "one of the sugar sheds of the port of New Orleans, and dedicated to public use as such." Again, it is alleged "that said property was and is dedicated to public use, and held by your orator for the use and benefit of all the inhabitants of the city of New Orleans, as part of the public quay in use as a sugar shed, * * *" and that "its destination or character as locus publicus has never been changed." No answer or plea was filed by the appellants. There is no sworn pleading or affidavit in the record denying the averments of the bill. Such affidavits were admissible. 1 Bates, Fed. Eq. Proc. 534.

The "return" made by the defendants (appellants here) to "the rule to show cause why the injunction should not issue" gives their grounds of contention that the property seized was the subject of seizure and sale under execution. The property was held under a lease, from which the city of New Orleans derived a revenue. On May 19, 1902, the city, acting by its proper officers, directed the comptroller to advertise the property for sale, on terms stated. It was advertised for sale. Bids were made for the property, but the city, having reserved the right to reject all bids, rejected such bids, and did not sell the property. This offer to sell the property, its advertisement, and the report of bids, and their rejection, is shown by exhibits attached to

the "return." It is also stated in the "return," but not supported by affidavit or any evidence, that "since the action of the council in rejecting the bids for the property seized herein subsequent efforts were made to sell the same, * * * and that the city council have within the last ten days renewed efforts to sell said property." The complainant (the appellee here) offered in evidence the affidavits of William Mehle, president of the common council of the city, and of Bernard C. Shields, a member of the council. The affidavit of the former shows the public use of the property, "and that the council has not changed their use, and it is doubtful whether it will do so." The affidavit of the latter is that "the council has made a tentative offer to sell the property, but has never withdrawn it from public use; that all bids were rejected some months ago upon the only proposal the city ever made to sell the property." The bill was the only verified pleading, and the two affidavits and the exhibits to the "return" the only evidence, before the trial court. The record before us does not show that the injunction pendente lite was improvidently issued.

The decree of the Circuit Court is affirmed.

PARDEE, Circuit Judge, having granted the restraining order, took no part in the decision of this case.