(136 So. 82)

## TOWN OF FARMERVILLE v. COMMERCIAL CREDIT CO.

No. 31008.

May 25, 1931.

Rehearing Denied June 22, 1931.

Shotwell & Brown, of Monroe, and F. Wilfred Gaudin, of New Orleans, for appellant.

Edward Everett, Jr., of Farmerville, for appellee.

Monroe & Lemann and Walter J. Suthon, all of New Orleans, amici curiæ.

ODOM, J.

At an election held in the town of Farmerville on October 26, 1926, the taxpaying voters of the municipality authorized the incurring of a debt and the issuance of bonds in the sum of $52,000 "for the purpose of purchasing or constructing waterworks within and for the town, together with all equipment and furnishings thereto, title to which shall be in the public." The mayor and board of aldermen issued the bonds, sold them, and with the proceeds constructed a system of waterworks for the town.

It seems that the estimated cost of the plant which the town proposed to install was $52,000, and the proposition to incur debt and issue bonds was submitted and voted on that basis. But it subsequently developed that the total cost of the waterworks plant would exceed that amount by $5,000. The plans finally adopted for the plant called for one 60 horse power engine, one 25 horse power engine one Sullivan air compressor and one power pump, with certain equipment appertaining to such machinery. These were purchased from the Fairbanks-Morse Company for the sum of $12,400. But the mayor and board of aldermen had left out of the proceeds of the sale of the bonds only $7,400, which they delivered to Fairbanks-Morse as a cash payment on the machinery, and for the balance of the price issued five notes each for $1,000, secured by vendor's lien and chattel mortgage on the machinery, the making of the notes and the granting of the lien and chattel mortgage being authorized by a resolution adopted by the mayor and the board.

The machinery was delivered, installed, and became part of the waterworks plant. The Commercial Credit Company, defendant, acquired these notes in due course. The mayor and board of aldermen paid the first maturing note and one-half of the second one, but defaulted on the balance. Whereupon the holder of the notes sought to foreclose its lien and chattel mortgage by seizure and sale of the machinery.

The town then brought the present suit to enjoin the seizure and sale on the ground that the property had been incorporated in the municipal waterworks plant and become part of it, and as such was public property, dedicated to public use, and therefore exempt from seizure and sale. There was judgment in the lower court for the town perpetually enjoining the creditor "from seizing, advertising or selling the property involved in this suit." The creditor appealed.

The municipality admits that it owes the amount represented by these mortgage notes, but contends that inasmuch as this machinery

is now a part of the municipal waterworks plant, a public utility, title to which is vested in the public and dedicated to public use, it cannot be seized and sold to satisfy any debt of the municipality; that public property, dedicated to the use and benefit of its inhabitants, is out of commerce and cannot be reached by its creditors under any process whatever. The defendant, on the other hand, while conceding that as a general rule public property cannot be seized and sold by the creditors of a municipality, contends that in cases like the present one, where a creditor has a vendor's lien and special mortgage, he may enforce the same against the property sold, even though the title thereto is vested in the public.

The cases of Edey v. City of Shreveport, 26 La. Ann. 636, and City of Shreveport v. A. Flournoy, Sheriff, et al., 26 La. Ann. 709, are cited in support of the proposition that property owned by a municipal corporation may be seized and sold to satisfy a mortgage given for the purchase price. In the first of the above-cited cases, the city purchased certain lots of ground to be donated to a railroad company for a site for its depot. The city paid one-half the price in cash and granted a lien and special mortgage on the property to secure the balance. The court upheld the mortgage creditor's foreclosure proceeding.

In the second case, the city of Shreveport sought to enjoin a creditor from proceeding by executory process to enforce the payment of the price of three lots. The court sustained a judgment dissolving the injunction, saying: "The city of Shreveport can not keep the property and refuse to pay the price."

If the property involved in these two suits had, as a matter of fact, been purchased for strictly public, municipal purposes, and was, at the time these proceedings were instituted, dedicated to public use, the cases would support the contention of the creditor in the case at bar. But in the one case the property was purchased to be donated to a railroad company and in the other the use to be made of the property is not stated. These decisions are therefore not in point.

The property involved in this litigation is a necessary, indispensable part of the waterworks plant of the town of Farmerville. The funds with which this plant was constructed were raised through a bond issue voted by the taxpayers of the town, as authorized by section 14, art. 14 of the Constitution 1921 and by Act No. 46, Extra Session of 1921. That article of the Constitution provides that municipal corporations may incur debt and issue negotiable bonds for "purchasing or constructing waterworks, sewers, drains, lighting and power plants, artificial ice and refrigeration plants, public parks, school houses, teachers' homes, and other public buildings, and works of public improvement, together with all necessary equipment and furnishings therefor, *title to which shall be in the public*, and for such *other public purposes* as the Legislature may authorize." Section 7 of the said act authorizes municipal corporations to incur debt and issue bonds for the purpose of "purchasing or constructing waterworks, * * * halls, court houses, jails, public markets, abbatoirs, fire department stations and equipment, hospitals, auditoriums, public parks, natatoriums, libraries, school houses, teachers' homes, and other public buildings *and such other works of public improvement as the Legislature may expressly authorize*." (All italics ours.) That section of the act closes with the following declaration: "The title to all such works, buildings and improvements shall be in the public."

As pertinent to the issues involved in this case, it is important to note that both in the

Constitution and the act, waterworks, public parks, schoolhouses, and other public buildings are referred to as public improvements for public purposes. As public utilities, waterworks plants, parks, and buildings are apparently placed in the same category as being public improvements, public property, title to which is in the public. They are built at public expense for the benefit and advantage of the inhabitants of the municipality, and are dedicated to public use.

The waterworks plant of the town of Farmerville, having been built under and pursuant to the provisions of the Constitution and an act of the Legislature, which provide that all such works and improvements are public property with title vested, not in the town as a corporate entity, but in the public, it follows that the town in its corporate capacity strictly speaking does not own them, has no title to them. They are owned by the public. The town in its corporate capacity, as a fictitious person, is merely the representative of the inhabitants. In such capacity, it merely holds such property as trustee and administers it as agent for the use and benefit of the public.

This waterworks plant being strictly public property is out of commerce and cannot be subjected to seizure and sale for the debts of the town. The jurisprudence, as settled in this state is concisely stated in the syllabus of the case of City of New Orleans v. Philip Werlein, 50 La. Ann. 1251, 24 So. 232, as follows: "Property once dedicated to public use is extra commercia, and inalienable by seizure and sale under execution against a municipal corporation, unless it is made affirmatively and clearly to appear that its use had been abandoned or lost by nonuser." Millaudon v. First Municipality of New Orleans, 1 La. Ann. 215; Delabigarre v. Second Municipality of New Orleans, 3 La. Ann. 230; Police Jury v. Mc-Donogh, 4 La. Ann. 352; Hassard v. Municipality No. 2, 7 La. Ann. 495; City of Shreveport v. Walpole, 22 La. Ann. 526.

In the case of Police Jury v. Foulhouze et al., 30 La. Ann. 64, certain judgment creditors of the parish of Plaquemines issued execution and seized a plat of ground on which was situated the courthouse and jail. The land had been donated to "the inhabitants" of the parish with the stipulation, "The present donation is made on the express condition that said *inhabitants* shall build and erect the court house of the aforesaid Parish on the piece of ground herein above described." (Italics ours.)

The police jury sued out an injunction against the sale "on the ground that the site had been dedicated to public use and was 'hors de commerce.'" The contention of the parish was sustained, Mr. Justice Spencer, the organ of the court, saying: "Property dedicated to public use can not be the subject of the private ownership. It is out of commerce and not liable to seizure. It is perhaps not unworthy of note that this donation is made 'to the inhabitants' of the Parish of Plaquemines and not to the parish in its corporate capacity. If the corporation can not in any sense be deemed the owner or holder of the property donated, it owns or holds it by the very terms of the act 'for the proper use and behoof forever' of the inhabitants."

The court then quoted the following from Dillon on Municipal Corporations, § 512: "A municipal corporation has no implied or incidental authority to alien or dispose of for its own benefit property dedicated to or held by it in trust for the public use, nor can it extinguish the public use in such property, nor is such property subject to the payment of the debts of the municipality."

The rule is stated as follows in 17 R. C. L., § 43, page 145: "As a general proposition, an

execution can not be levied against the property of a county, state or municipal corporation in the absence of a statute expressly granting such right in express terms. Even where such right is granted, however, it is generally the rule that an execution can not be levied on any property held by a municipality or other public corporation for public purposes, such as public buildings, school houses, streets, alleys, and public squares, parks, promenades, *waterworks*, hose and hose carriages, engines and engine houses and engineering instruments, *the principle being that title to such property is held in trust for the public and hence can no more be sold to settle the debts of a city or other political subdivision than can any other trust property be sold to settle the individual debts of any other trustee.*" (Italics ours.)

■■ A municipality may, of course, own property which is not and can never be needed for strictly municipal or public purposes; and property which, though once dedicated to and used for such purposes, is abandoned as a public utility. Such property may be treated as the private asset of the municipality and may be levied on and sold under execution for the debts of the corporation. But property not owned by the municipality in its corporate capacity, but by the public, the inhabitants, dedicated to public use, is not subject to seizure and sale for the debts of the municipality as long as it is so used. It is exempt as a matter of public policy.

Whether the property involved in this case is subject to levy and execution depends upon its status. That it is public property dedicated to public use, the title to which is vested in the public; that it is owned by the public, the inhabitants of the town, and not by the town in its corporate capacity cannot be questioned. The waterworks plant was built with the proceeds of a bond issue voted by the taxpayers under laws which expressly provide that all such "public works" shall belong to the public. The town of Farmerville, as a political corporation, has no ownership in or title to the property. Its only function with reference thereto is to hold it in trust and administer it for the service, use, and benefit of those they represent, those who own it, the inhabitants.

■■ The debt represented by the notes here involved is a debt of the town and not of the inhabitants of the town. The only debt incurred by the public for the building of the waterworks plant was the bond issue of $52,-000 secured by a tax voted and authorized to be levied for twenty years. Conceding that the mayor and board of aldermen of the town had authority to bind the municipality for the payment of these notes, it does not follow that they could create a debt the enforcement of which would disrupt the waterworks of the town built in the manner described. The engines, the air compressor, and pumps which defendant seeks to seize and sell have been built into and become part of the waterworks plant as a unit. They are indispensable parts of the general system. To take them out, separate them from the unit, would utterly destroy the function of the plant, upon which the inhabitants depend for water supply. The result would be to extinguish the public use of this purely public utility, this public property. As a matter of public policy, such cannot be done.

■ The argument is made that it is inequitable to permit one to purchase property on credit and keep it without paying the price. As to this particular case, the answer to that argument is that the vendor of this machinery knew when it sold the machinery that it was dealing with a municipal corporation with limited powers to contract debts; that the property was destined for public use; that it was to be built into and

become part of a waterworks plant "the title to which was in the public." It received $7,-400 in cash payment, which it knew was part of the proceeds of the sale of public utility bonds. It was charged with knowledge that the town, in its corporate capacity, did not or would not own the plant when constructed, and would not own the property sold once it became merged into a public utility and dedicated to public use.

The granting of liens on public property is against public policy. In the case of Phillips v. University of Virginia, reported in 97 Va. 472, 34 S. E. 66, 47 L. R. A. page 284, the Virginia Supreme Court of Appeals said: "It is a well-settled rule that public property used for public purposes is not liable to sale for the payment of debts. To allow it to be done would thereby annihilate the public uses. For this reason public policy forbids a lien on public property. A lien upon property implies the right to sell it for the payment of the lien, but, public property not being liable to be sold for the payment of debts, a mechanic's lien cannot be asserted upon it, unless expressly authorized by law. This is the general current of the decisions."

Many cases are cited in support of the rule announced.

In the case of Porter v. Town of Ville Platte, 158 La. 342, 104 So. 67, 69, this court quoted with approval the following from the case of Wilkinson v. Hoffman, 61 Wis. 637, 21 N. W. 816: "The considerations founded on grounds of public policy and regard for the objects of municipal government forbid that this clause [that with reference to mechanic's liens] should be held to apply to machinery placed in a building constituting a part of the city waterworks, as strongly as to exempt the building itself. The public inconvenience which would result from having such machinery removed is too obvious and grave to re-

quire any discussion. The comfort, health, safety, and property of the citizens would be greatly endangered by allowing the facilities for procuring water to be suspended, even for a short period."

The court, in the Ville Platte Case, after citing 18 R. C. L., § 9, pp. 881, 882 and 883, and many decisions by this court and one by the United States Supreme Court, said: "The legal principle governing all of these cases is that the title to such property [public property] is held in trust for the public, and therefore can no more be sold to satisfy the debts of a state or other political subdivision than can any other trust property be sold to satisfy the debts of any other trustee."

In the Ville Platte Case (and those there cited), the court was speaking of a mechanics' lien. The plaintiff there was employed by the town to furnish labor and material for the construction in the town of a portion of a system of waterworks. The town accepted his work and issued to him certificates of indebtedness. He asserted a lien and privilege on the plant under article 3249 of the Civil Code, which specifically provides that those who furnish labor or materials for the construction of works of any character have a lien and privilege on the works constructed for the payment of their claims. The court held that the plaintiff was entitled to judgment in personam against the corporation, but not to a lien on the plant, on the ground that the "title to such property is held in trust for the public" and cannot be sold for the debts of the municipality.

But learned counsel for appellant say that the granting of vendors' liens and mortgages on such property is authorized by Act No. 248 of 1912, as amended by Act No. 34 of 1914, and by section 13 of Act No. 136 of 1898, as amended by Act No. 135 of 1916. The act of 1912 applies to all cities and towns and

section 6, which is relied upon, authorizes the municipal authorities to "make contracts of lease for acquirement of a system or systems of property for any of the systems mentioned in this Act in which shall be embodied the right to purchase the system or property from the lessor or lessors for a fixed sum of rental payable in installments. * * * In case of the failure of the city or town to make punctual payment of the installments * * * the system of property shall not revert to the lessors—but the city or town shall buy the property for the unpaid portion of the price originally named in the lease *and shall issue mortgage notes bearing on said property* to secure the unpaid portion and the payment shall be in equal installments of one, two, three, four and five years—with interest at the rate of six per cent per annum and said act of mortgage shall contain all the usual security clauses." (Italics ours.)

This section of the act authorizes cities and towns through their municipal authorities, to purchase systems or plants already built as units for private, proprietary purposes. The title to such property vests in the city or town, which is specially authorized to hypothecate the entire plant to secure the payment of the unpaid balance of the price.

But the act does not authorize municipal authorities to grant liens and mortgages upon property, the title to which is vested in the public and not in the corporation as such.

Act No. 136 of 1898 does not apply for the reason that the town of Farmerville was incorporated by Act No. 51 of the Extra Session of 1870, by which it is still governed. It has not voted to adopt the provisions of said act.

The judgment appealed from is affirmed with all costs.

O'NIELL, C. J. (dissenting).

It seems to me that, in the prevailing opinion rendered in this case, too much importance is given to the expression in the statutes, referring to waterworks plants and other such public improvements, "title to which shall be in the public." That does not mean that the title shall be in the inhabitants of the municipal corporation, except in the sense that the title is in the municipal corporation itself. The property belonging in common to the inhabitants of municipal corporations is divided into two classes, according to article 458 of the Civil Code, viz.:

"Things which belong in common to the inhabitants of cities and other places, are of two kinds:

"Common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common; such as the streets, the public walks, the quays.

"And common property which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues."

According to that distinction, a waterworks plant is of that class of common property which belongs to the municipal corporation, and may be employed for the advantage of the inhabitants, by the administrators of the revenues of the plant. The distinction was drawn very clearly in Anderson v. Thomas, 166 La. 526, 117 So. 573.

It is not disputed that the two engines, the air compressor, the power pump and its equipment, on which the Fairbanks-Morse Company reserved a vendor's lien and chattel mortgage, are easily identified and may be removed easily from the premises and leave the waterworks plant in the same condition in

which it was before this machinery was installed there. It must be conceded therefore—and in fact it is conceded—that the plaintiff's lien and mortgage might be legally foreclosed if the machinery which is subject to the lien and mortgage belonged to a private corporation or an individual.

According to section 1 of Act No. 248 of 1912, p. 550, as amended by Act No. 34 of 1914, the municipal authorities of cities and towns are authorized to establish, purchase, lease, control, construct, maintain and operate waterworks. According to section 2 of the act, as amended by Act No. 34 of 1914, p. 99, the municipal authorities are authorized to carry out the object mentioned in section 1 by issuing bonds, certificates and other forms of indebtedness to procure such public utilities. According to section 3 of the act, the municipal authorities may enter into any of the above-mentioned contracts, and issue therefor their above-recited obligations. And, according to section 6 of the act, the municipal authorities may issue mortgage notes bearing on said property to secure the unpaid part of the price, making the payments in equal installments of one, two, three, four and five years, bearing interest at six per cent. per annum, and the act of mortgage shall contain all of the usual security clauses.

If this statute does not, in terms, authorize the municipal authorities to buy waterworks machinery on credit and secure the payment by the recognition of a vendor's lien and by the granting of a chattel mortgage, it certainly does away with the policy of the law exempting such property from seizure and sale, and permits the seizure and sale, to satisfy a vendor's lien or chattel mortgage given to secure the price of such property.

It seems anomalous to me that a municipal corporation may buy machinery for its water-works plant, on credit, and be not responsible for the solemn obligation of the municipal authorities to recognize the vendor's lien on the machinery bought. I submit that there can be no valid sale without the payment of the price, or obligation to pay the price.

The general proposition that municipal property which is dedicated to or used for a public purpose is not subject to seizure for a debt of the municipality is applicable only to the ordinary debts of the municipality, and not to a debt due for the price of such property. There is no reason of public policy why the Fairbanks-Morse Company, or any other machinery manufacturer, should furnish machinery for the waterworks plant of the town of Farmerville, free of cost. The inhabitants of the town would not be worse off if the plaintiff should retake this machinery than they would have been if the machinery had not been sold to the municipality. If the doctrine of the majority opinion in this case is to prevail, a municipal corporation will be unable to buy on credit replacements of machinery or equipment for its waterworks plant, no matter how urgent the need may be.

The distinction which I make between this case and that of the City of Monroe v. Ouachita Parish School Board (La. Sup.) 135 So. 657,[1] decided today, is that in that case we were dealing with a special statute exempting school property from seizure and sale, and were dealing with a debt which was not contracted by, but was imposed upon, the school board; that is, an assessment for street pavement.

BRUNOT, J., concurs in dissenting opinion of CHIEF JUSTICE.

---

[1] 172 La. 861.