Dear Mayor Brown:
You requested an opinion of this office on whether the Town of Saint Joseph ("Town") may file a lien and privilege against a dilapidated building owned by the Tensas Parish School Board ("School Board"), for the cost of demolishing or removing the building pursuant to the Town's ordinance ("Ordinance"). The building regulations in the Ordinance call for the demolition of dangerous buildings by the Town after notice to the building owner, a hearing (except in an emergency), and an opportunity for the owner to comply with the mayor's order of demolition or removal; to recoup its costs of demolition and removal of the building, the Town takes a lien and privilege against the lot and improvements thereupon. As the owner of the building and lot in the present case is the School Board, a political subdivision of the State, you request an opinion from this office on the Town's ability under state law to claim a lien and privilege on property owned by a public body such as the School Board. You advise that all procedures under the Ordinance preliminary to demolition and lien have been followed, such as notice of hearing, hearing, notice of the Town's proposed demolition or removal upon the owner's failure to comply with the Town's decision and lapse of appeal delays.
The relative powers of a town concerning zoning and building regulations and those of a school board, particularly the ability of a town to place or enforce a lien against a school board's property, is not directly addressed in the statutes or case law. Subject to uniform procedures established by law, towns are constitutionally authorized to (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. See La. Const. art. VI, § 17. *Page 2 
Towns are further authorized by statute to condemn, demolish and remove any dilapidated building within the municipality endangering the public welfare, and are entitled to have a lien and privilege for their cost of demolition, removal and maintenance. See La. R.S. 33:4761 and La. R.S. 33:4766. Courts have recognized and upheld the police powers of towns in the areas of zoning and building regulations, as explained below.
School boards do not have constitutional powers, but the legislature is constitutionally authorized to create parish school boards. La. Const. art. VIII, § 9. As such, the powers of school boards derive from statutes. City and parish school boards have the power to recover for any damage that may be done to the property in their charge; they may change the location of a school house, sell or dispose of the old site, or of any site which for any reason can no longer be used or which is unused and unnecessary or unsuitable as such, and use the proceeds thereof for procuring a new one. La. R.S. 17:81(H).
Case law confirms that a city may exercise its police powers by enforcing its zoning authority against other governmental entities. See Orleans Parish School Board v. City of NewOrleans, 468 So.2d 709 (La.App. 4 Cir. 1985), writ den.,472 So.2d 593 (La. 1985) and Apex Oil Co. v. City of Port Allen,357 So.2d 624, (La.App. 1 Cir. 1978), writ den., 358 So.2d 632
(La. 1978). In Orleans Parish School Board v. City of NewOrleans, the court upheld the constitutionality of a city zoning ordinance which changed the zoning requirements for school buildings from a permitted use to a permitted conditional use in residential areas. As a result of the change, the school board was required to seek approval from the New Orleans City Council when it desired to locate a school in a residential area. The school board argued that the ordinance was unconstitutional because it conflicted with the provisions of La. R.S. 17:81
authorizing the school board to determine the location of school houses. The court rejected the argument, finding that the legislative grant of the power to locate school buildings was not an unfettered right. Rather the right was to be exercised in a reasonable manner. The ordinance passed by the city, according to the court, did not interfere with the board's ability to select the location of its school houses. Rather, it merely helped to ensure that the school board made its decision in a reasonable manner.
In Apex Oil Co. v. City of Port Allen, supra, the court upheld the right of the City of Port Allen to enforce its building restrictions within the jurisdictions of the Baton Rouge Port Commission. The court found that the port commission had not been granted any police powers, and that no authority could be found showing the state had altered or recalled the power of the city to regulate building within its jurisdiction. The court concluded that prior to the formation of the port commission, the City of Port Allen possessed the power to adopt building restrictions and require building permits pursuant to the provisions of its charter and the state general law. The court also concluded that the state had the *Page 3 
authority to alter or recall this delegated power. Finding nothing in the Constitution or the statutes to show that the police powers of the City of Port Allen as they applied to the port's property were recalled, the court upheld the city's authority to enforce the provisions of its building code.
Thus, in the exercise of its police powers, it appears that the Town of St. Joseph is authorized to undertake necessary demolition of any property within the town limits that the Town determines to be derelict and dangerous, including property owned by a school board.[1] However, the authority of the Town to place a lien on the school board's property to recover the costs of demolition is a separate issue not addressed by the law and jurisprudence discussed above. Property owned by school boards is public property, where the ownership is vested in the school board, in the manner of a statutory trustee, for the accomplishment of its duty. See Orleans Parish School Board v.City of New Orleans, 56 So.2d 280, 284 (La.App.Orleans 1952). The ownership of school property is generally in the local district or school board as trustee for the public at large. School property is thus considered public property and is not to be regarded as the private property of the school district by which it is held or in which it is located. City of Baker SchoolBd. v. East Baton Rouge Parish School Bd., 1999-2505 (La.App. 1 Cir. 2/18/00), 754 So.2d 291, 293.
La. Const. art. XII, § 10(C) provides that "no public property or public funds shall be subject to seizure," and that "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." While this constitutional provision does not expressly prohibit a lien being placed on public property, it does provide that no public funds (not just public property) may be seized. Further, the granting of liens on public property is against public policy. See Townof Farmerville v. Commercial Credit Company, 173 La. 43,136 So. 82, American-La France Foamite Industries v. Town ofWinnfield, 184 La. 1043, 1050, 168 So. 293, 295 (La. 1936).[2] *Page 4 
We recognize that the issue you pose concerns the ability of the Town to take a lien and privilege on property owned by the school board for the cost of demolition and removal, and not necessarily the seizure of public funds or public property. However, the Town is prohibited from taking any steps toward enforcing the lien, as the only way a lien can be enforced against a school board unwilling to pay is through seizure of public property or public funds resulting from the sale of the property belonging to the school board. La. Const. art. XII, §10, prohibiting the seizure of public funds or public property and providing for appropriations by the legislature or by the political subdivision as the sole means to collect from a governmental body cannot be reasonably interpreted as allowing public property to be burdened with liens, while simultaneously prohibiting the enforcement of such liens. Therefore, notwithstanding La. R.S. 33:4766, it is our opinion that a lien may not be placed on public property, or at the very least, a lien on public property is of questionable validity.[3]
However, as mentioned above, the Town has the necessary authority to undertake the demolition and removal of any dilapidated building within its limits as it deems necessary, including a building owned by a school board.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 CHARLES C. FOTI, JR Attorney General
 By: ___________________________ Uma M. Subramanian Assistant Attorney General
CCF, Jr.:UMS:lrs
[1] Note that the school board is statutorily authorized to recover for any damages done to school board property under La. R.S. 17:81. From the information you provided during telephone conversations and the pictures of the school house attached to your request, we understand that the school house is in ruins and that the demolition will not cause any "damage" to the building. In any event, an attempt by the school board to recover damages from the City's demolition and removal of a derelict building would be inconsistent with La. Const. art. VI, § 17 and La. R.S.33:4761 authorizing the City to undertake demolition of derelict and dangerous buildings.
[2] The issue you pose does not involve the voluntary granting of a lien by the school board, but a lien involuntarily placed on school board property by the Town. Thus, Town of Farmerville is arguably inapplicable, but the public interest determination is likely to be the same in both instances.
[3] It appears that the clerks of court of several parishes accept a lien on any property, including public property, for filing purposes alone, without making any determination of validity of the liens filed. However, the ministerial acceptance of the filing of a lien against public property does not by itself determine the legality or validity of such liens.