## No. 7778.

CHRISTIAN KLINE vs. THE PARISH OF ASCENSION.    J. C. BOULANGER ET AL., GARNISHEES.

The Court *a qua* ruled properly, that the Petition of intervention of the judgment debtor in the garnishment process against third persons, should stand as an Answer.

The rents of property dedicated to a Parish for public use, are, like the property itself, exempt from seizure for debt, even if the object of the dedication has been abandoned or changed by the municipal authorities of the Parish.

APPEAL from the Fourth Judicial District Court, parish of Ascension. *Duffel*, J.

Kline vs. The Parish of Ascension.

*Frederick Duffel* for Plaintiff and Appellee:

First—The cases of Egerton vs. The Third Municipality, 1 An. 435; Police Jury of Baton Rouge vs. Michel, 4 An. 84; Parish of Plaquemines vs. Foulhouze, 30 An. 65; McKnight vs. Parish of Grant, 30 An. 61; Police Jury of Jefferson (right bank) vs. McCormack et al., 32 An. 624 and others relied upon as settling the principle, that taxes due to a municipal corporation, public things under articles 453 and 454 R. C. C., as well as public squares, court-houses, jails, etc., of a parish cannot be seized under execution by a creditor of the corporation, do not apply to the question in controversy here.

Second—The rents seized in this case now before the court cannot be regarded as having the same character as that of the taxes, or of the public buildings, or of the property dedicated to public use held by a municipal corporation in trust, not liable to alienation, mentioned in the cases referred to above, where the principle announced was based mainly upon the ground that the paramount interests of public order and the principles of government forbade the right claimed by a creditor of the corporation to seize and sell that class of rights and property. They (the rents) are neither essential nor indispensable to the existence of the parish corporation, nor to the useful and proper exercise of the municipal administration. And the parish might be deprived of them without in any degree impairing the capacity of the Police Jury to exercise their functions under the law. City of New Orleans vs. Home Mutual Insurance Company, 23 An. 61; McEnery vs. Pargoud, 10 An. 500.

Third—Under the rule in Municipality No. Three vs. Hart, 6 An. 571; City of New Orleans vs. Home Mutual Insurance Company, 23 An. 61; 14 An. 875, and 16 An. 407, and for like reasons, a judgment creditor of the parish may cause such rents to be seized and sold in satisfaction of his debt. See, also, 10 An., p. 500.

Fourth—To exempt from seizure the rents due by the lessees occupying the square bounded by Cabahanosse, Opelousas, Attakapas streets and the public square, it was incumbent on defendant to prove what he alleged, viz: that the said square had been donated to all the inhabitants of the Parish of Ascension for public school purposes, that the revenues derived therefrom were *hors de commerce*, and that the Police Jury could only administer said revenues under the limitations prescribed by the acts of donation. No actual donation of the *locus in quo* has been proved, and defendant has failed to show any title in the parish. (See his brief, p. 4, verbo "Third.") It is a well settled rule of practice that, "to recover, one must make his claim certain; to make it only probable is not enough." Hen. Dig. vol. 1, p. 524, verbo Evidence XIII, No. 1, and cases cited. "Plaintiff must prove his allegations or he cannot recover." Ib. No. 3, and authorities cited. "If plaintiff's evidence be inconsistent with his pleadings he cannot recover." Ib. No. 6.

Fifth—The property alleged to be donated by documents marked "A" and "B," with the buildings thereon, intended and appropriated for a jail and court-house, for the use of the county aforesaid, "have been used for the public purposes so intended to the present day and have never been use for any other purposes" (Record, pp. 31, 32), and the copies of the act of donation marked "B" fails to show that the lot leased to Raphael Mousse is included in the *locus in quo*. Record, pp. 41, 42.

Sixth—The Act of 1842, amending the Act of 1833, entitled, "an act granting to the Police Jury of the Parish of Ascension, the lots and buildings erected by the State at the town of Donaldsonville, commonly called the 'State House,' " only provided that the proceeds of the sale of said property should be applied to the purposes of public education exclusively. (See Sess. Acts of 1842, p. 298, No. 117). It is not pretended that said property has been sold, and the contest is not about the proceeds of the sale, but of the rents thereof.

Seventh—The distinction attempted to be drawn by defendant, between the Police Jury representing the inhabitants of the parish and the inhabitants themselves, is too remote for practical purposes. 10 An. 499; 11 An. 631; 7 An. 515; 15 An. 362.

Eighth—The evidence in the record is insufficient to show dedication to public use, pleaded by defendant, of the square bounded by Cabahanosse, Opelousas, Attakapas streets, and the public square. It fails to show any title thereto in defendant. Nor does it show anything

equivalent to such dedication of the *locus in quo*, except that the main building on this land was used as a public school and a residence for the teacher from 1821 to 1861; was generally called "the college," and was never used for any other purpose during that time than for keeping a public school. *Per contra*, the said property not being used any more for public school purposes, never having been so used from the year 1861 up to the present day, has lost its dedication to public use, if its use as above be considered as such dedication; and it has ceased to be public—if ever it was—from the fact of its not being used any more for the public purposes to which it was formerly appropriated. The parish forfeited the same by misuser. 16 An. 407; 10 An. 499, 500.

Ninth—There is this broad distinction between the cases cited by defendant and that before the court, which must be seen even at a passing glance. Here there is no question of the alienation of property dedicated to public use, of the right to seize and sell taxes due a corporation, or the court-house, jail, recorder's office, clerk's office and office furniture; whilst in the cases relied upon in the 1, 4, 8, 30, 32 and other Annuals, those were the only questions raised and decided.

But granting that the soil itself, if donated to the parish and dedicated to public use, cannot be seized for any debt due by the parish, it by no means follows that the rents of the soil may not be. 30 An. 361.

*R. N. Sims* for Defendant and Appellant:

Lands held by a city for public purposes or ground rents arising therefrom and forming a part of its public revenues, are not subject to seizure and sale on execution. 7 An. 148, Klein vs. New Orleans; 9 Otto, 149.

The opinion of the Court was delivered by

LEVY, J. The plaintiff, having obtained judgment against the defendant for the sum of $1625 33⅓, issued thereon a writ of *fieri facias*, and had process of garnishment served on Boulanger and others, who, he alleged, were indebted to the defendant, said parish. The garnishees in their answers acknowledged themselves to be indebted to the parish in certain sums for the rent of certain lands situated in the town of Donaldsonville. The Police Jury of Ascension parish filed a petition (which is styled in the agreement or statement of facts, in the transcript, one of intervention and injunction, and which was, by the court, ordered to stand as an answer or opposition of defendant to the garnishment proceedings), wherein they alleged that the purpose of the garnishment process was " to cause to be seized and applied to the payment of said judgment the revenues or rentals, arising from the lease, to the garnishees of portions of lands which do not belong to the Parish of Ascension, but are the common property of all the inhabitants of said parish, and which were donated to the inhabitants for the purpose of erecting thereon a court-house, jail and public schools, and were dedicated for common use as public property, and are ' *hors de commerce;*' that the revenues derived therefrom by lease or in any other manner cannot legally be applied to the payment of any parochial indebtedness; that the Police Jury of the parish has administered said property and its revenues solely as trustees of all the inhabitants of the parish, and that the revenues therefrom, as well as the lands themselves, are ' *hors de*

·commerce,' and not liable to seizure." They also prayed for a writ of injunction, restraining the plaintiff from proceeding further in the enforcement of the said garnishment process, so far as said revenues are concerned, and enjoining the garnishees from paying to plaintiff any sums due as rentals of said lands. The record does not disclose any action of the court on the prayer for the injunction. There was judgment of the court a qua in favor of the plaintiff, decreeing that the rentals due and to be become due, should be paid by the garnishees to the plaintiff to the extent of said judgment. The defendant has appealed.

The court a qua ruled properly that the "petition of intervention," should stand as an answer.

The judge a quo in his reasons for judgment held, that he did "not consider the rents seized in this case were essential to the existence of the corporation of the Parish of Ascension, nor to the useful and proper exercise of its functions. The parish might be deprived of them without in any degree impairing the proper exercise of their functions by the Police Jury thereof, and we think they can be very properly held to form a part of that class of rights which a creditor can seize under Art. 637, C. P." * * * "We think, therefore, that the sums due to the parish for rents of lots belonging to it are liable to seizure."

The only question for our consideration and decision, is that presented to the lower court, viz: Are the rentals of the parochial lots liable to seizure ?

The authorities cited by the plaintiffs seem to us inapplicable to this. In the cases quoted by them, the seizure of taxes or of pecuniary indebtedness to the parishes or municipalities growing out of bonds given to these public corporations or fines due them, was involved: in this, the right to seize and render liable for their indebtedness the revenues derivable from property donated to a parish for specified public purposes or dedicated to the public use.

The property, from which the rentals are sought to be subjected to plaintiff's judgment, was donated to the Parish of Ascension, or dedicated to it, for public uses. If the parochial authorites, who, we think, are mere trustees for the benefit of the inhabitants of the parish, fail to administer the property for the purposes intended by the donors, this fact cannot vitiate or annul the donation or dedication. At best such acts and conduct can only be regarded as unfaithful administration, and the remedy rests with the inhabitants or any of them to invoke the aid of the courts, and in proper proceedings restrain the malappropriation or misappropriation of the property or its revenues, when violative of the intent of the donor. The decision in the case of *The Police Jury of the Parish of Plaquemines vs. Foulhouze, 30 An. 64,* in our opinion, covers this case. There the Court said: "Property dedicated to public use

cannot be the subject of private ownership. It is out of commerce and not liable to seizure. R. C. C. 449, 454, 455 and 458; 4 An. 84; 7 An. 595; 18 An. 560; 2 An. 627; 21 An. 244; 29 An. 38, 630; Dillon on Municipal Corporations, sec. 531."

" A municipal corporation has *no implied or incidental authority to alienate or dispose of* for its own benefit property dedicated to, or held by it, in trust for the public use, nor can it extinguish the public uses in such property; nor is such *property subject to the payment of the debts of the municipality.*" Dillon on Municipal Corporations, ¿ 512.

We hold then that property donated or dedicated to a parish, for public uses, is not liable to seizure for debts due by the parochial corporation, and the revenues derived from such property have the same character as the property itself, are destined for public uses, and are likewise not liable to seizure. But, it is said, the property itself and its revenues are not applied to the *specific* purpose for which the donation or dedication was made. If such be the case, they are none the less property with its accessory revenues, intended for *public uses,* and the right to have the donation or dedication annulled and the property revert to the donor, for the reason that the conditions have not been fulfilled, remains with the donor, and the misappropriation by the donee may be rectified by the parties in interest.

A parish, or rather parochial authorities, are but the representatives within certain territory, and with limited statutory powers of the people within its territorial limits, and while their acts, within the scope of their clearly defined granted powers, are binding upon their constituents, we cannot admit that their malfeasance or misfeasance can divest such constituents of their vested rights of property. The closing portion of the opinion of the Court in the case just cited, seems to us to be decisive of the principle herein involved. " We see no significance in the fact that the whole of the donated tract is not in actual public use. It suffices that the public has a right to use. Nor does the fact that the part seized was cultivated in rice in 1875, under lease from the parish, operate to deprive the public of its rights of use. We have just seen that the parish cannot directly or indirectly divest the property of its public character. How much of said property is or is not needed for the use of the public, is not, in its nature a judicial question. It suffices for us to know that the public *has a right* to the use of *the whole,* and for aught we can know, may have some day *necessity* for its use." Dillon on Municipal Corporations, ¿ 531, 445, 64, 446; 9 Otto, 149; 7 An. 148.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered in this case, it is ordered, adjudged and decreed that the opposition of defendant to the

proceedings in garnisment be sustained, that said garnishment proceedings be dismissed, and that the appellee do pay the costs of both courts.

Mr. Justice Poché recuses himself in this case, having been of counsel in the original case.

Rehearing refused.