On Rehearing.
NICHOLLS, J.
This case on the first hearing was presented to and decided by the court upon the presumption, apparently accepted by both parties, that the sale which the plaintiff enjoined had been finally determined upon by the city. In the opinion heretofore pronounced we said:
“We pass without comment the possibility of (not) selling the property. The contention of both plaintiff and defendant is that it could be sold. The common assent between the parties leaves nothing for discussion touching the sale. The city has before attempted to sell the property. There was a sale made, and after-wards canceled. It is evident that there is a determination to sell the property. Immediately after the sale, it will lose its character of locus publieus.”
In the application for a rehearing counsel say:
“It is our special purpose to now ask the most serious consideration of certain fundamental legal principles applicable to this controversy, not heretofore elaborated.”
We rarely open for discussion on a rehearr ing matters which the litigants have not pressed when the ease was first before the court. The matters in this litigation being public in character, far-reaching in effect, and of great importance, we deal with the case as an exceptional one. We are informed by counsel that the sale, which we assumed had been fixedly determined upon, “has been abandoned, and that an ordinance has been prepared at the request of the hoard of commissioners of the Public Belt Railroad, and submitted to the city council, to dedicate the sugar shed property in perpetuity to public use, as part of the Public Belt Railroad, for depot purposes.” They urge:
“Such a dedication will really be but a slight change from the original use of the property, as it will remain part of the public quay, and will continue to be as much security to bondholders as it ever was. The city should be allowed to make this disposition of it. The property will, if this dedication is made, be a necessary part of one of the most important public utilities ever begun, and it will be administered by a public board, in the interest of the whole people, for their greater advantage and prosperity.”
Referring to the past, counsel say:
“The only ground upon which plaintiff bases its theory that the property has lost its special character as a locus publieus is that the city has several times taken steps towards its sale. It is true the city had made offers to sell the property. It is also true that the city has made attempts to adjudicate it; but it did so because it believed that it had the legal power to terminate the dedication to public use of the property by sale, so that the proceeds might be applied to public use and improvements. The city was acting, as it thought, under authority of the power which alone can change or authorize the change of property dedicated to public use. It acted because section 15, cl. 14, of the charter of 1896 (Acts 1896, p. 55, No. 45), and section 8, cl. 14, of the charter of 1882 (Acts 1882, p. 21, No. 20), has given it the right to sell batture property, and section 94, p. 74, of the charter of 1896 and section 65, p. 35, of the charter of 1882, has appropriated all contingent revenues to public works.”
Declarations by the city that property dedicated to public use is no longer necessary for public use, unless such declarations are made with express statutory authority, cannot affect the dedication. A mere offer to sell, never consummated, no matter for what reason, cannot, under the law and decisions of this state, be taken as evidencing change in a destination of public property.
Counsel quote the following language of the court in suit No. 15,871 on its docket (recently decreed) 40 South. 783, 116 La. 417:
“The proposition that the mere offer to sell withdrew the property from public use is not sustained by the case cited (New Orleans v. Louisiana Const. Co., 140 U. S. 604, 11 Sup. *715 Ct. 968, 35 L. Ed. 556), which involved a lease of batture property, but is a mere inference from a statement in the opinion that the Supreme Court would have so decided, had the point been presented. * * * Property dedicated to public use was excepted in the acts of 1880 and 1884, and the latter act also excepted such assets and revenues as pertain to the administration of the said city and necessary for the suxDport of the same. Act No. 110, p. 144, of 1890, provided that one-half of the surplus of the public of the 1 per cent, debt tax should be devoted to public improvements. This act has been modified so as to devote such portion to a particular public improvement, to wit, sewerage and waterworks. _ It was, therefore, not the intent of this legislation to hamper the city of New Orleans in the acquisition, sale, or exchange of proxJerty for public uses. As the board has no title or interest in property dedicated to public use, it has no legal right to the proceeds of such property consecrated to the same public use. The recognition of such a right would simply compel the city of New Orleans to hold indefinitely property once dedicated to public use, without any resulting benefit or advantage to the board of liquidation.”
Counsel say:
“It is admitted by the plaintiffs, and assented to by the court, that the property was from early days, and when Act No. 31, p. 54, of 1876, Act No. 133, p. 180, of 1880, Act No. 67, p. 89, of 1S84, Act No. 110, p. 144, of 1890, and the constitutional amendment of 1892, were adopted, dedicated to public use. It is also a ¡fact that the ‘sugar sheds’ property is at this moment a locus publieus proxJerty, the dedication of which to the particular use originally contemplated has never yet been changed or removed.
“The sugar sheds are now being used for a public purpose, and, even if they were temporarily leased to private individuals for private purposes, under the jurisprudence of the state, as shown by the Foulliouse Case and the cases cited, the property would still be hors de commerce. Police Jury v. Foulhouse, 30 La. Ann. 66; Kline v. Parish of Ascension, 33 La. Ann. 562; Ice Co. v. City, 43 La. Ann. 224, 9 South. 21; Kerr v. City of New Orleans, 126 Fed. 920, 61 C. C. A. 450. It is a fact that the property is a locus piublieus, part of the ancient quay of the city of New Orleans, dedicated to public use in 1724, when the Western Company held its charter from Louis XIV of France. The history of the property is set forth in the cases of Fleitas v. New Orleans, 51 La. Ann. 1, 24 South. 623, and New Orleans v. Louisiana Construction Co., 140 U. S. 662, 11 Sup. Ct. 968, 35 L. Ed. 556.”
A city may have private property bought by the corporation and held by deed. It may use this property for one public purpose or another, or let it remain idle. It has title to and ownership of such property. Pro]?erty, however, dedicated to public use, is not owned by the city, but held by it in trust to be administered for the use to which it has been destined. Without action by the sovereign, it is hors de commerce, inalienable, not subject to change, even as to its use. The sugar sheds property is of the latter class. Dillon on Municipal Corporations, §§ 445-512.
By Act No. 131 of 1902, the city council by two-thirds vote can change the destination of the sugar sheds property from the original use to which it was destined to a public utility owned by the city. There being no executed sale by the city, the city should be left free to exercise its acknowledged right to change the destination of the property from the use to which it was destined to a use almost identical. Capdevielle v. N. O. & San Francisco R. R., 110 La. 903, 34 South. 868.
Under article 906 of the Code of Practice, this court is authorized, when it does not think it possible to pronounce definitely in the cause in the state in which it is, to remand causes to the end that it may decide according to law. We have given this case much consideration, and have reached the conclusion that matters are not in such a condition before us to enable us to decide according to law and with justice to all parties. We may say incidentally we are in doubt as to whether the term “batture property,” as used in the acts alluded to, referred to property in the possession of the city under the tenure it holds the sugar sheds piroperty. We think that an examination of the subject may disclose that the batture property on the river front above Canal street is held by a tenure different from that on the river front below Canal street. In order that this case should be passed on fully and completely by the lower court, we think the proper course is to set aside the judgment appealed *717 from herein, reinstate the cause, and remand the same to the district court for further proceedings according to law.
We are of the opinion, and so decree, that nothing done by the city in respect to the sugar sheds property up to the institution of this suit has had the effect of changing its character or status of property dedicated to public use, or of estopping it from receding from making the proposed sale of same.
For the reasons herein assigned, our original opinion herein' is set aside, and it is hereby ordered, adjudged, and decreed that the judgment herein appealed from be, and the same is, hereby annulled and reversed, and it is now ordered, adjudged, and decreed that this cause be reinstated on the docket, and •it is hereby remanded to the district court for further proceedings according to law; costs of appeal to be paid by the appellee..