O’NIELL, C. J.
 

 The Ouachita parish school board has appealed from a judgment rendered in favor of the city of Monroe, recognizing a lien on school pr'operty, to secure the payment of a special assessment levied for the pavement of the street in front of the property. The amount of the judgment is $2,277.98, plus interest at 6 per cent, per annum from the 26th of April, 1930, and 10 per cent, attorney’s fee. The judgment is, in terms, only a judgment in rem, and orders that the school property on which the assessment is levied shall be seized and sold to pay the amount of the judgment.
 

 The assessment was levied according to the provisions of Act No. 27 of the Extra Session of 1915, p. 57, as amended by Act No. 26 of 1916, p. 58, by Act No. 107 of 1916, p. 230, by Act'No. 206 of 1924, p. 383, by Act No. 215 of 1926, p. 346, and by Act No. 177 of 1928, p. 236; and the assessment was levied on all of the property fronting on that part of the street which was paved, according to the front-foot rule, as provided by the law. There is no dispute about the regularity of the proceedings.
 

 The school board contends that the judge should not have rendered a judgment in rem, or one imposing a lien upon the property, because, according to section 1320 of the Revised Statutes, public school property is exempt from seizure, viz.:
 

 “Property dedicated to the use and belonging to public schools, or employed by. municipal corporations for that purpose, shall be and is hereby exempted from seizure.”
 

 
 *864
 
 The city of Monroe contends — and the district judge decided — that the authority of a municipal corporation to levy a special assessment on property to pay the cost of street paving includes the authority to seize and sell the property to pay the amount of the assessment. It was decided in Town of Franklinton v. Police Jury of Washington Parish, 126 La. 2, 52 So. 172, that the town could levy a special assessment on the courthouse square for its proportion of the cost of paving sidewalks. Nothing was said in the opinion in that case as to whether the town could seize and sell the courthouse square while the temple of justice stood on it, or should look to the police jury of the parish to find other ways and means of paying the judgment.
 

 The city of Monroe contends — and the district judge held — that section 1320 of the Revised Statutes was repealed by implication, by the statutes which we have cited, authorizing municipal corporations to pave their streets at the expense of the owners of the adjacent property. There is no provision in these statutes which, expressly or by necessary implication, repeals this section of the Revised Statutes. The argument is that the section of the Revised Statutes is superseded by the statutes, in so far as may be necessary for the collection of a special assessment for the pavement of a street in front of school property, because such property is not expressly exempted from the provisions of the statutes authorizing such assessments. The repeal of a law by implication, by a subsequent law, does not occur, unless the two laws are on the same subject. Section 1320 of the Revised Statutes was, originally, Act No. 151 of 1855, p. 200, entitled “An Act to exempt property of Public Schools from seizure.” The act was copied literally in the Revised Statutes as section 1320, under the heading “Education.” Act No. 27 of 1915 (Ex. Seso.), under which this special assessment was levied, is entitled, “Añ Act to provide an additional means whereby cities and towns (the City of New Orleans excepted) having
 
 a
 
 population exceeding one thousand, and all incorporated parish seats, may pave, gravel, macadamize, resurface, repair, or otherwise improve, streets and alleys, and levy and collect special taxes and local contributions on property abutting thereon to defray the entire cost of such work, repair, or improvement.” The section 'of the Revised Statutes and the act of 1915, therefore, do not refer to the same subject-matter ; and there is no apparent reason to believe that it was intended by the act of 1915 to abolish, as far as might be necessary for the collection of a special assessment for the paving of a street, the exemption of public school property from seizure so long as it is used for that public purpose.
 

 Our .opinion is that the judgment appealed from is correct in so far as it recognizes a lien on the property on which the special assessment was levied, but that the judgment is wrong in so far as it orders — or even allows — the property to be seized and sold while it is dedicated to, and used for, the purpose of a public school. If the property ever goes
 
 into commerce or
 
 ceases to be used for or dedicated to public education, it may be seized and sold to satisfy the city’s judgment against it. To that extent the city’s lien is of some value, because it is not likely that the school board will refuse to budget and appropriate an amount sufficient to pay the debt rather than allow the interest and the ten per cent, thereon to augment the debt beyond the commercial value of the property. In that connection we’ are referred to the pertinent remarks of Mr. Justice Eenner, for the court, in Carter v. State of Louisiana, 42 La. Ann. 931, 932, 8 So. 836, 21 Am. St. Rep. 404, viz.:
 

 
 *866
 
 “Legislative acts authorizing individuals to sue the state upon claims which the legislature for any cause does not see fit to recognize and pay, have been of. common occurrence in this and in other states. Their purpose and effect, as commonly understood, are undoubtedly nothing more than to refer to the judiciary the settlement of the questions of law and fact involved in the claims, and the determination, in the form of a judgment, of the rights of the parties. It is implied, as a matter of course, that the legislative power, after making such a reference, will accept and abide by the judicial determination, will recognize the judgment rendered as final and conclusive, and will, in due and ordinary course, make provision for the satisfaction thereof.
 

 “Counsel asks of what use is the power to render judgment against the state if the court is powerless to execute the judgment? The question was anticipated by Mr. Hamilton in the discussion of the constitution of the United States before its final adoption. ‘To what purpose,’ he asked, ‘would it be to authorize suits against sovereign states for the debts they owe? How could recoveries be enforced? It is evident that it could not be done without waging war against the contracting state.’ Federalist, No. 81. He never dreamed that authorizing suit against a state would imply the right to issue fieri facias on the judgment.”
 

 The judgment appealed from is annulled in so far as it orders — or even allows — the school property on which the special assessment was levied to be seized and sold while the property is dedicated to, or used for, public school purposes. In all other respects the judgment is affirmed. The appellee, city of Monroe, is to pay the costs of this appeal, and the appellant, school board, the costs incurred in the district court.