## J. B. McCRARY CO. v. TOWN OF WINNFIELD et al.
### Civ. A. No. 2887.

District Court, W. D. Louisiana, Alexandria Division.

Aug. 23, 1941.

Frank H. Peterman (of Peterman, Hunter & Neilson), of Alexandria, La., for plaintiff.

A. A. Moss and R. D. Cantwell, both of Winnfield, La., for defendants.

PORTERIE, District Judge.

The plaintiff, a corporation organized under the laws of the state of Georgia, sues the Town of Winnfield, a municipal corporation chartered and existing under the laws of the state of Louisiana, alleging that it is the owner of an ordinary judgment against the town in the sum of $10,315.85 with legal interest thereon from March 10, 1928, until paid, and that the judgment was rendered by this court on November 17, 1931; plaintiff alleges further that the judgment is recorded in the mortgage records of Winn parish, wherein the Town of Winnfield is located, and that the judgment, from which no appeal was taken, has long since become final.

It is alleged that by the use of the process of this court, twenty-two acres of land belonging to the town were sold on July 11, 1936, and brought a price of $3,000 as a credit on the judgment.

Plaintiff alleges that it has made repeated requests and demands on the Town of Winnfield, through its mayor and town council, for payment of the balance due on the judgment, or for an arrangement to retire the judgment in some manner, but without avail; that vague promises have been made by the defendants over a period of the past seven years to retire the judgment, but that as a matter of fact the town and its governing authorities have made no bona fide effort to pay the balance due, or any part thereof; on the contrary, have no intention of paying and will take no action unless forced to do so; that the defendants have given various excuses for not paying the judgment, claiming that they could not provide for payment of same in the budget, that they had reached their limit of taxation, that they had no surplus revenues from which to meet the obligation, and that their revenues are barely sufficient to meet the usual and necessary operating expenses of the town.

Petitioner shows that about in the year 1935, at which time this judgment remained unpaid, the town voted the sum of $4,000 as a contribution to the Works Progress Administration for the building of a new city hall. The trial of the case on this point disclosed that in the year 1935, a tornado hit the town and practically destroyed the former city hall, and that the Works Progress Administration contributed the like amount of $4,000 in order to build a new city hall. The city hall is in the business district and the evidence is that the mayor and members of the town council thought it well to construct a two-story building and to use the front part of the lower floor as two stores, to be rented to private individuals. The evidence at the trial disclosed that the amount of $4,000 was raised by the town through new revenue from the authorization of the sale of whiskey for three years at this period.

The city hall is a two-story brick building, on the upper floor of which are the offices of the mayor and the members of the council, and also a large recreation hall which, the trial disclosed, is for the free use of all local civic and patriotic organizations. The local organizations required an entrance charge to the functions held, some of which were dances, but all the revenue was for the organization giving the benefit, dance, or entertainment, not a cent being received by the town. The rear part of the first floor is used for the fire engine room, a jail, and a warehouse for sundry small articles belonging to the town.

The two front stores have been rented for several years and are now yielding to the town $110 per month, and it is plaintiff's most urgent contention that since this is a venture by the Town of Winnfield outside of a purely governmental function, the revenues from this venture are subject to seizure and should become an exception to the general rule that the property of a municipality is not subject to execution, title thereto being in the public.

Petitioner alleges further that the town at one time was the owner of the light and waterworks plant; that consequently the town was engaged in a private enterprise; that the rights of the town under its lease of this plant to the Gulf Public Service should be declared subject to seizure in satisfaction of this judgment.

By subsequent amended petition, plaintiff shows that the Town of Winnfield is the owner of a certain described piece of real property (giving itemized description); that this piece of town property has been leased for residential purposes by the town, and therefore is private property; and contends that all the rights of the town in said lease, and the property itself at the expiration of the lease, are both subject to seizure and sale under petitioner's judgment.

The aggregate prayer of the petition is for (original petition) "judgment herein declaring that certain two-story brick building known as the city hall in Winnfield, Louisiana, to be subject to seizure and sale under execution in satisfaction of petitioner's judgment; and in the alternative that the revenues from said building be declared subject to seizure, and that the defendants herein be required to apply same to the payment of petitioner's judgment; that further judgment be rendered herein against the said town declaring all of its rights under any lease, contract or other agreement affecting its utilities to be subject to seizure.

"Petitioner further prays that the defendants herein be required in their next annual budget to budget the balance due your petitioner on its judgment as above set forth, and to set apart all funds above the necessary and usual charges of operating the city government to be applied on petitioner's judgment, and that any surplus now, or hereafter, remaining in the treasury of the Town of Winnfield to be paid to petitioner until such time as its judgment, with interest and costs, be paid in full.

"Petitioner further prays that said defendants herein be required to assess, levy, and cause to be collected a property tax in said town in an amount within the constitutional limits which will either pay said judgment in full, or such balance as may be left after the credits, if any, are obtained from other sources above mentioned." and (amended petition) " * * * judgment herein declaring the property described in paragraphs two, three and four of the above supplemental and amended petition to be subject to seizure and sale under execution in satisfaction of petitioner's judgment against said Town of Winnfield, in the manner and to the extent set forth in the preceding paragraphs of the above supplemental and amended petition."

In paragraph 2 of the amended and supplemental petition plaintiff states that "if the Court holds that the entire building above described (city hall) is not subject to seizure, then in that event petitioner should be allowed to seize and sell that part of the building used for commercial or private purposes; and in the alternative, if the Court should hold that neither said building nor any part thereof is subject to seizure and sale under petitioner's judgment, then in that event petitioner is entitled to the right of occupancy of the portions of said building used as stores or for other commercial purposes, or which are not used in a governmental capacity; and/or the right to occupy, lease, rent, or otherwise control and dispose of the use and occupancy of such portions of said building, and to collect the rents and revenues derived therefrom under any existing leases now in force, or which might hereafter be made, and to make contracts with reference thereto; and to seize and sell at public sale the rights and interest of the Town of Winnfield above described in the portions of said building above mentioned."

Paragraph 3 refers to rights under the lease of the utilities plant and waterworks plant to the Gulf Public Service Corporation, and paragraph 4 refers to a former street abandoned for public use and now leased by the town for residential purposes.

The record shows that the Town of Winnfield has a revenue of about $14,000 per year and a disbursement of like amount. The gentlemen who have been mayor and secretary-treasurer for a number of years testified in the case, and have shown that Winnfield is a well-administered town. The annual revenue from the two stores of $1,320 is shown in the municipal budget for the year 1941.

█ The property of the debtor is the common pledge of his creditors. Chaffe et al. v. Gill et al., 43 La.Ann. 1054, 10 So. 361; Standard Cotton Seed Oil Co. v. Matheson, 48 La.Ann. 1321, 20 So. 713, 720.

This fundamental rule applies to a municipal corporation, subject, however, to the numerous exceptions to and immunities from the rule, established by the jur-

isprudence over many decades. In 1846, in the case of Egerton v. Third Municipality of New Orleans, 1 La.Ann. 435, it was held that taxes due to a municipal corporation cannot be seized under execution by a creditor of the corporation; that such a right would involve a power to destroy the corporation itself and be repugnant to the letter and spirit of the Constitution, which authorizes the creation of such corporations for the preservation of public order. A host of subsequent cases are based upon the Egerton case, and thus by its repeated reaffirmance its principle is now beyond discussion.

■ The immunity from seizure of property, whether movable or immovable, title to which is vested in the public, has been consistently upheld by our courts. New Orleans v. Louisiana Const. Co., 140 U.S. 654, 11 S.Ct. 968, 35 L.Ed. 556; New Orleans v. Morris, 105 U.S. 600, 26 L.Ed. 1184; Klein v. New Orleans, 99 U.S. 149, 25 L.Ed. 430; New Orleans v. Werlein, 50 La.Ann. 1251, 24 So. 232, reversed on other grounds, 177 U.S. 390, 20 S.Ct. 682, 44 L.Ed. 817; State v. G. R. Finlay & Co., 33 La.Ann. 113; Police Jury of Plaquemines Parish v. Foulhouze, 30 La.Ann. 64; West Baton Rouge v. Michel, 4 La.Ann. 84.

Varying phases of the general principle are illustrated by a number of cases. For instance, in the case of Town of Farmerville v. Commercial Credit Co., 173 La. 43, 136 So. 82, 76 A.L.R. 686, it was held that indispensable machinery, on which a vendor's lien and chattel mortgage existed in favor of the creditor, could not be foreclosed upon when this machinery had become incorporated in the municipal waterworks, title to which was in the general public.

■ The theory in Louisiana is that property dedicated to public use is not owned by the municipality as a corporation but by the general public, and for that reason is not subject to seizure and sale upon a writ of fieri facias by a judgment creditor. It was held in Town of Franklinton v. Police Jury of Parish of Washington, 126 La. 2, 52 So. 172, that the town could levy a special assessment on the courthouse square for its proportion of the cost of paving sidewalks—but it is to be noted that no right was given the town to seize and sell the courthouse square while the temple of justice stood on it. Likewise, in the case of City of Monroe v. Ouachita Parish School Board, 172 La. 861, 135 So. 657, the city of Monroe, in whose favor a lien on school property existed because of the special assessment levied for the paving of the street in front of the school property, was denied the right of execution on this judgment and of its recognized lien as long as the property "is dedicated to, and used for, the purpose of a public school." 135 So. at 658.

We now approach one of the two cases mainly relied upon by defendant, to wit, John Klein v. City of New Orleans, 99 U.S. 149, 9 Otto 149, 25 L.Ed. 430. In this case the lands, and the ground rents thereon, which were sought to be subjected to levy and execution, consisted of (as stated in the bill of exceptions) "two squares of ground which had formerly constituted the easterly bank of the Mississippi River, but which, by the gradual accretion of said easterly bank, had ceased to constitute the bank of the river, but which were now used by the public for wharf and levee purposes, said squares forming a portion of the land known as the 'Batture property.'" 99 U.S. at 150. As to the ground rents, the Supreme Court of the United States quoted approvingly from the case of New Orleans & C. R. R. Co. v. Municipality No. 1, 7 La.Ann. 148, as follows: "'In authorizing the mayor and city council (of New Orleans) to sell property on perpetual ground rent, the legislature established a legal destination of the rents, as a portion of the public revenue of the city, to enable the municipal authority to exercise its powers of police and government. These rents, therefore, cannot be sold under execution against the municipality.'" 99 U.S. at 151.

■ In the instant case the renting of the two stores to private individuals is an absolutely nongovernmental function not permitted by any law, while in the Klein case there is a presumed legislative characterization of the Batture lands as public and a presumed legislative declaration that the rent revenue is a part of the public fisc of the city of New Orleans. In the absence of such a characterization as to the two stores and in the absence of such a declaration as to the rent from the two stores, the court is without power, granted or inherent, to decree the rents here intrinsically public revenue.

The second case, a later one, is that of Kline v. Parish of Ascension, 33 La.Ann. 562. This is the closest case in the books to the one at hand for decision. It appears that the plaintiff-appellee urged nearly all, if not all, of the legal reasoning offered by plaintiff in this case; and the defendant-appellant relied singly and solely on the case of John Klein v. City of New Orleans, lastly discussed; and the court said, as follows:

"The only question for our consideration and decision, is that presented to the lower court, viz: Are the rentals of the parochial lots liable to seizure?

"The authorities cited by the plaintiffs seem to us inapplicable to this. In the cases quoted by them, the seizure of taxes or of pecuniary indebtedness to the parishes or municipalities growing out of bonds given to these public corporations or fines due them, was involved: in this, the right to seize and render liable for their indebtedness the revenues derivable from property donated to a parish for specified public purposes or dedicated to the public use.

"The property, from which the rentals are sought to be subjected to plaintiff's judgment, was donated to the Parish of Ascension, or dedicated to it, for public uses. If the parochial authorities, who, we think, are mere trustees for the benefit of the inhabitants of the parish, fail to administer the property for the purposes intended by the donors, this fact cannot vitiate or annul the donation or dedication. At best such acts and conduct can only be regarded as unfaithful administration, and the remedy rests with the inhabitants or any of them to invoke the aid of the courts, and in proper proceedings restrain the malappropriation or misappropriation of the property or its revenues, when violative of the intent of the donor. The decision in the case of Police Jury of Parish of Plaquemines v. Foulhouze, 30 La.Ann. 64, in our opinion, covers this case. There the court said: 'Property dedicated to public use cannot be the subject of private ownership. It is out of commerce and not liable to seizure. R.C.C. 449, 454, 455 and 458; (Police Jury of West Baton Rouge v. Michel) 4 La.Ann. 84; (Copley v. Dinkgrave) 7 La.Ann. 595; (Pickett v. Brown) 18 La.Ann. 560; (City of Shreveport v. Walpole) 22 La.Ann. 526; (City of Baton Rouge v. Bird) 21 La.Ann. 244; (Burke v. Wall) 29 La.Ann. 38 (29 Am.Rep. 316); (Sheen v. Stothart) 29 La.Ann. 630; Dillon on Municipal Corporations, sec. 531.'

"'A municipal corporation has no implied or incidental authority to alienate or dispose of for its own benefit property dedicated to, or held by it, in trust for the public use, nor can it extinguish the public uses in such property; nor is such property subject to the payment of the debts of the municipality.' Dillon on Municipal Corporations, § 512.

"We hold then that property donated or dedicated to a parish, for public uses, is not liable to seizure for debts due by the parochial corporation, and the revenues derived from such property have the same character as the property itself, are destined for public uses, and are likewise not liable to seizure. But, it is said, the property itself and its revenues are not applied to the specific purpose for which the donation or dedication was made. If such be the case, they are none the less property with its accessory revenues, intended for public uses, and the right to have the donation or dedication annulled and the property revert to the donor, for the reason that the conditions have not been fulfilled, remains with the donor, and the misappropriation by the donee may be rectified by the parties in interest."

The factual differentiation we have to make is that in the instant case we do not have a donation; the leasing of part of the city hall for the purpose of storekeeping is essentially not a governmental function, and when the mayor and the board of aldermen, that is, the administrators for all the inhabitants of the Town of Winnfield, enter into this private venture, they place the revenue derived with public capital (part of the city hall) outside of the general immunity from seizure and sale accorded a municipal corporation when strictly engaged in governmental functions.

The Supreme Court of Louisiana has led us to this differentiation by the following language found in Town of Farmerville v. Commercial Credit Co., 173 La. 43, 136 So. 82, 85, 76 A.L.R. 686: "A municipality may, of course, own property which is not and can never be needed for strictly municipal or public purposes; and property which, though once dedicated to and used for such purposes, is abandoned as a public utility. Such property may be treated as the private asset

of the municipality and may be levied on and sold under execution for the debts of the corporation. But property not owned by the municipality in its corporate capacity, but by the public, the inhabitants, dedicated to public use, is not subject to seizure and sale for the debts of the municipality *as long as it is so used.* It is exempt as a matter of public policy." (Italics supplied.) That portion of the city hall leased to private persons for private use was not "so used." We cannot separate, however, the privately-used part of the city hall from the publicly-used part; but we should and do set aside the rental return from the privately-used part and submit such to seizure and sale.

The inhabitants of the Town of Winnfield profited from the sewerage equipment furnished by plaintiff, forming the basis of the judgment sued upon here. The court has examined the record of suit No. 1790 at Law, J. B. McCrary Co. v. Town of Winnfield, mentioned in plaintiff's petition, and has ascertained that the Town of Winnfield had declared an indebtedness of about $100,000 and issued bonds over a period of years in payment thereof, for the purposes of an additional installation to its sewerage system. After the main amount was spent, there being left odds and ends in the way of necessary expenditures on the project, the plaintiff furnished them and became the ordinary judgment creditor of the town.

■ We subscribe to the Louisiana doctrine set out by all the cases quoted herein, on the point that public property and institutions are not subject to execution; however, the fundamental and equitable principle exists that one, even a municipal corporation, should pay its debts and, as in the instant case, when the town leaves its chartered field of action and engages in a private venture, the revenues from this venture, though the capital (the city hall) vests in the general public, are subject to execution for the payment of a debt judicially determined and declared, such as an ordinary judgment.

■ It is clear that municipal corporations may function both in a public and a private capacity. The meaning of the legal phrase "private capacity," as developed by the many decisions, envisages the entrance by the municipal corporation in the business of furnishing water, lights, power and sewerage, or passenger transportation by street car, etc., erstwhile considered to be properly in the field of private enterprise; and special charters and general statutes have come to include the several types of utilities in the domain of proper municipal service. It is not to be denied that when the lower floor of the city hall is leased out for private storekeeping, the municipality is acting certainly in a private capacity, if not actually engaged in an ultra-vires act.

■ There is solid background to the rule that principles of law affecting municipalities vary according to whether the municipality has acted in a private or public capacity. The most noteworthy variance occurs in the determination of when a municipality is, or when a municipality is not, held liable in tort. Theoretically, a municipality cannot be held liable for its tort; however, the jurisprudence is today unanimously well established that when the municipality's acts are of a private or quasi private character the municipality is liable for its torts in the same manner that a private corporation is liable. We quote from 43 C.J. 930, Municipal Corporations, Sec. 1705: "There is an implied or common-law liability for the negligence of a municipal corporation in the performance of corporate acts which have relation to the management of the corporate or private concerns of the municipality, and from which it derives special or immediate profit or advantage as a corporation, or for its acts or negligence in the exercise of corporate powers and duties for the peculiar benefit of the corporation in its local or special interest, which of course includes the management of property for private gain or the engaging in any profit-making enterprise, if it is authorized by statute or the provisions of its charter to engage in such private business. The fact that the profit or advantage inures ultimately to the benefit of the public, or may incidentally be of public benefit, does not render the enterprise a public function so as to exempt the municipality from liability; the municipality is liable, although exercising some municipal powers, where the work is essentially a private enterprise. And if the enterprise is of the nature indicated, it is immaterial that it has not, as a matter of fact, actually proved a profitable venture."

The Louisiana jurisprudence is in keeping with the above general statement of the law found in Corpus Juris. See New

Orleans v. Kerr and Gally, 50 La.Ann. 413, 417, 23 So. 384, 386, 69 Am.St.Rep. 442; Vicksburg, S. & P. Ry. Co. v. City of Monroe, 164 La. 1033, 115 So. 136; Solomon v. City of New Orleans, 156 La. 629, 101 So. 1; Rome et al. v. Indemnity Co., La.App., 156 So. 64, 65.

We quote in full from the Rome case:

"In the case of Solomon v. City of New Orleans, 156 La. 629–633, 101 So. 1, 3, the court said: 'It seems to be universally recognized by the text-writers and by jurisprudence that the powers and obligations of a municipal corporation are of a twofold character: (1) Those that are of a public nature; and (2) those that are of a private nature. * * * The line of demarcation between where the powers of a municipal corporation as the agent of the state end, and those merely local, private, and for corporate purposes begin, is often difficult of determination. But it is quite clear that the distinguishing character of municipal authority determines the liability or nonliability of a municipality for injury and damage arising ex delicto. And in determining this question the rule is that the claim under which a municipality seeks exemption as being in the exercise of a governmental function must be strictly construed. Bennett v. New Orleans, 14 La.Ann. 120.'

"In Hall et al. v. City of Shreveport, 157 La. 589, 592, 102 So. 680, 681, we find: 'It is well settled that the powers and obligations of municipal corporations are twofold in character: Those that are of a public nature, and those that are of a private nature. As to the first, or public character of its powers and obligations, the municipal corporation represents the state, discharging duties incumbent upon the state. As to the second, or private character of its powers and obligations, the municipal corporation represents the pecuniary and proprietary interests of individuals. In its public character, as the agent of the state, it becomes the representative of sovereignty, and is not answerable for the nonfeasance or malfeasance of its public agents. In its private or proprietary functions it is held to the same responsibility as is a private corporation.' "

Consequently, as, when the governmental agency engages in a proprietary function for profit, exemption from liability for tort is forfeited, likewise, when the Town of Winnfield engaged in the proprietary function of renting a part of its city hall to private persons for profit, its immunity from execution by writ of fieri facias on the rental return is forfeited.

Though there is much in the language of the cases of Klein v. City of New Orleans, supra, and Kline v. Parish of Ascension, supra, which could support a judgment by this court denying plaintiff's claim altogether, we are denying plaintiff's claim in all but one particular, and that is where we find the city deriving revenue from participation in private business. On this point the weight of authority, we believe, is best expressed in 23 C.J. 355, Executions, Sec. 105: "Where property of a municipal or other public corporation is sought to be subjected to execution to satisfy judgments recovered against such corporation, the question as to whether such property is leviable or not is to be determined by the usage and purposes for which it is held. The rule is that property held for public uses, such as public buildings, streets, squares, parks, promenades, wharves, landing places, fire engines, hose and hose carriages, engine houses, public markets, hospitals, cemeteries, and generally everything held for governmental purposes, is not subject to levy and sale under execution against such corporation. The rule also applies to funds in the hands of a public officer. Likewise it has been held that taxes due to a municipal corporation or county cannot be seized under execution by a creditor of such corporation. But where a municipal corporation or county owns in its proprietary, as distinguished from its public or governmental capacity, property not useful or used for a public purpose but for quasi private purposes, the general rule is that such property may be seized and sold under execution against the corporation, precisely as similar property of individuals is seized and sold."

It would seem to be the honest thing to hold the funds of the municipality derived from such a private venture to the payment of its recognized and judicially-declared debts, such as the plaintiff's judgment. It should not be said that a municipal corporation makes itself so active that it has to go beyond its chartered functions and enter the domain of private commerce, and yet at the same time be able to say that it owes judgments and need not pay them.

There is more reason for this being true in the instant case because the constitutional limit of taxation (seven mills) for the purposes of general alimony is already imposed by the Town of Winnfield; therefore plaintiff, the judgment creditor, has no means, not even the hope, of collecting by a special millage, imposed by the town council for a period of years, to meet the judgment.

Property, both real and personal, even though owned by a municipal corporation in Louisiana, has been subjected to execution by writ of seizure by an ordinary creditor of the municipal corporation. A notable case is that of the City of New Orleans v. Home Mutual Insurance Co., 23 La.Ann. 61, where certain bonds of a private corporation owned by the city of New Orleans were seized by an ordinary judgment creditor of the city. The defense made by the city was that the bonds had the character of public property and that an individual creditor could not appropriate to his individual benefit property destined for the use and benefit of the corporation and of the people. The Egerton case, supra, was urged by the city for its protection. The Supreme Court, reiterating its previous pronouncement as to the immunity of property of municipal corporations from seizure, because title thereto was either in the public or in the administrators of the municipal corporation, said: "The bonds, seized in the case now before the court, can not be regarded as having the same character as that of the tax due the Municipality, or of that of the public buildings in the cases relied upon in the First and Fourth Annuals. They are not essential to the existence of the corporation nor to the useful and proper exercise of its functions. The corporation might be deprived of them without impairing in any degree its capacity to exercise the functions contemplated by the. act of incorporation." 23 La.Ann. at 62.

Well might it be said that the enlargement of the city hall, permitting the Town of Winnfield to lease these two stores to private corporations, was not an essential act to the existence of the Town of Winnfield, nor was the enlargement of the building beyond present needs the useful and proper exercise of its municipal functions. Permitting the seizing ordinary creditor to take the rents from these two stores will not in any degree prevent the Town of Winnfield from exercising the functions contemplated by the act of its incorporation.

The case of Kline v. Parish of Ascension, 1881, supra, has been cited often and affirmatively, and notably one of the early references to it is found in Board of Liquidation of City Debt v. City of New Orleans, 1906, 118 La. 712, 43 So. 307, 308, when it is said therein: "The sugar sheds are now being used for a public purpose, and, even if they were temporarily leased to private individuals for private purposes, under the jurisprudence of the state, as shown by the Foulhouze Case and the cases cited, the property would still be hors de commerce."

In the instant case we still leave the city hall proper, even though part of it be leased to private individuals for private purposes, within the immunity to execution by seizure and sale; but we do maintain that when the administrators of the city hall use a part of the hall as a private corporation would use it, not as a municipal corporation should, the immunity from execution by seizure and sale is lost, because of the transgression of the law, to the degree that the revenues derived from this private venture are subject to seizure and sale by an ordinary judgment creditor of the municipality—who has secured his judgment for a consideration that went to the general municipal good.

By the same reasoning found in this whole opinion, the plat of ground described in article 4 of the amended petition and owned by the Town of Winnfield in its private character is declared to be subject to execution on the judgment of plaintiff-creditor, subject to the existing recorded lease in favor of John S. Hunt for ninety-nine years beginning on February 17, 1908. "Property once dedicated to public use is extra commercia, and inalienable by seizure and sale under execution against a municipal corporation, unless it is made affirmatively and clearly to appear that its use had been abandoned or lost by nonuser." City of New Orleans v. Werlein, 50 La.Ann. 1251, 24 So. 232.

All of the demands of plaintiff, with the exception of the two above items of its prayer granted, are denied, and plaintiff's suit in those particulars is dismissed.

Plaintiff has no right to execution under writ of fieri facias on any of the town's rights under any lease, contract, or other agreement affecting its utilities. The case of Porter v. Town of Ville Platte,

158 La. 342, 104 So. 67, is in point and holds that one furnishing the materials and labor for the construction of a portion of a system of waterworks, consisting of power house, tower, tank, mains, hydrant, meters, and other appurtenances, for which certificates of indebtedness were issued, is not entitled to recognition of lien and privilege therefor, but is only entitled to an ordinary judgment and, accordingly, cannot seize and sell the portion of the waterworks system, though he be the unpaid vendor. See also the case of Town of Farmerville v. Commercial Credit Co., supra, wherein it was held that municipal waterworks shall belong to the public and classify strictly as public property, not subject to execution even under a vendor's lien; the town's only function with reference to the waterworks plant being to hold it in trust and administer it for the service of the inhabitants.

The court is without power to substitute itself for the town council, the legislative department of the Town of Winnfield, under the theory of separation of powers under our State and Federal Constitutions; and, accordingly, this court is powerless to substitute its discretion and order the budgeting of the revenues and expenditures of the Town of Winnfield in such a manner as would compel the town council and mayor of the Town of Winnfield to budget petitioner's judgment in any manner.

By this decision, we are not ignoring the jurisprudence as established by the Klein and Kline cases, supra—wherein the court in each case was concerned with a private donation for a specific public purpose. In either one of the cases, if a judgment creditor had been permitted to seize even the revenue from the capital representing the private donation, it would have been the equivalent of permitting a violation of the intent or purpose of the donation—for indeed it must be assumed that the donor meant the capital and its accessory, the revenues therefrom, no matter how derived, to be devoted solely to the purpose of the donation. To make the illustration practical, suppose a donation be one for school purposes; to lift the immunity from seizure and sale of the revenues from the donated property in favor of, let us say, the judgment in this case, would be the allocation of money away from the schools, the object of the donation, to pay the cost of a sewerage system. We have such a different situa-

tion in this case. The ordinary judgment of plaintiff represents the debt of all the inhabitants of the Town of Winnfield; whether it be a debt for waterworks, sewerage, pavement, or general governmental purposes, it matters not; and the revenue from the city hall, gathered from a private venture, is used to pay this judgment debt no matter what its origin.

Judgment in consonance will be signed upon presentation.